[Civ. No. 1655. Third Appellate District.—May 21, 1917.]

## VICTORIA ALDEN, Appellant, v. C. E. MAYFIELD, Respondent.

LANDLORD AND TENANT—RECOVERY OF TREBLE RENTS—WILLFUL WITH-
HOLDING—SUFFICIENCY OF EVIDENCE.—In an action by a landlord to
recover possession of demised property, rents due up to the time
of the termination of the tenancy and for treble rent for the period
subsequent to that date, a willful holding over is established under
section 3345 of the Civil Code by evidence of deliberate, intentional,
obstinate refusal to surrender possession with knowledge that the
tenancy had been terminated, and that the tenant was holding over
against the will and consent of the landlord, and not under a reason-
able claim of right.

ID.—WILLFUL HOLDING OVER—OMITTED ALLEGATION—CURE BY ANSWER.
While in an action to recover treble rents for holding over after
demand and one month's notice in writing, the complaint should
contain an allegation that the holding over was willful, the omis-
sion of such an allegation is cured by the allegation in the answer
that the defendants from the date of the termination of the tenancy
retained possession of the premises in good faith and under claim
of right.

APPEAL from a judgment of the Superior Court of
Solano County, and from an order denying a new trial.
A. J. Buckles and W. T. O'Donnell, Judges.

The facts are stated in the opinion of the court.

W. U. Goodman, for Appellant.

T. T. C. Gregory, C. J. Goodell, and Dan Hadsell, for Re-
spondent.

BURNETT, J.—The action was brought to recover posses-
sion of certain real property in Suisun, Solano County, for
rents due up to the time of the termination of the tenancy,
and for treble costs for the period subsequent to that date.
At the first trial judgment was rendered for defendant, from
which an appeal to the supreme court was taken and a re-
versal had. (*Alden* v. *Mayfield*, 164 Cal. 6, [127 Pac. 45].)
The new trial resulted in a judgment "that said plaintiff have
and recover from said defendant the sum of six hundred and

fifty dollars with interest thereon from the first day of April, 1911, . . . and that plaintiff is not entitled to and shall not recover treble rents.'' From this judgment, and the order denying her motion for a new trial, plaintiff has appealed, claiming that the rent due was one thousand dollars, and that it should have been trebled, that the judgment, in other words, should have been in her favor for three thousand dollars.

Two questions, then, are presented for determination: First, whether there is any evidence to support the finding of the trial court that the rental value of the premises was $65 per month; and, second, whether there is any justification for the court's conclusion that the rent should not be trebled.

As to the first of these considerations there can be no kind of doubt. Appellant argues at length, and with persuasive force, that the rental value was actually one hundred dollars per month. There is undoubtedly evidence to support the contention, but Mr. Mayfield testified that the reasonable rental value "was $65.00 per month. . . . The rental value of that property from June 1st to the time I vacated was not one cent in excess of $65.00 per month. In proportion the other rents for adjoining places were lower. In that neighborhood they were lower.'' He was a qualified witness, and, in view of the finding of the court below, his testimony must be accepted here at its face value. Further discussion of that matter is foreclosed.

The position of appellant as to the other question is based upon section 3345 of the Civil Code, providing: "If any tenant, or any person in collusion with the tenant, holds over any lands or tenements after demand made and one month's notice, in writing given, requiring the possession thereof, such person holding over must pay to the landlord treble rent during the time he continues in possession after such notice.''

There is no doubt that such notice was given and defendant held over for ten months thereafter, but the defense is sought to be made that the holding over must be ''willful,'' in order to subject the tenant to the penalty provided by said code section, and that the lower court by its finding negatived the existence of this element. Attention is called to the fact that the headnote of said section is: "Tenant willfully holding over,'' and the contention is made, supported by authority, that this must be deemed an important part of said section, and be accorded the same effect as though included in the

body of the law.    As a legal proposition this may well be conceded, and we need not review the cases cited to the point.

But we are of the opinion that the element of willfulness was clearly shown, and that the finding to the contrary is entirely unsupported.    There seems to be in that regard no substantial difference between the showing at the second trial and at the first.    It is appropriate, therefore, to quote the following language of the supreme court in said opinion (164 Cal. 6, [127 Pac. 45]): "The difficulty with this argument [referring to the contention that there was a waiver by reason of the deposit of the rent] is that the defendant was informed before the deposit of money, both by the principal and by her attorney, that Haile no longer had anything to do with the matter, and we repeat that defendant's endeavor under those circumstances to re-establish the relationship of tenancy with the landlord who had repudiated him and terminated the tenancy was but a shallow bit of subterfuge and trickery. . . . Still further in this connection it is to be noted that the defendant does not deny, as it was incumbent upon him to deny, the allegation that he was holding over against the will and consent of the plaintiff.    This he admits and the admission under the circumstances is a pregnant one.    It amounts to an admission that he knew there was no waiver and no continuation of the tenancy so far as plaintiff was concerned. . . . Therefore, the evidence, so far from establishing a waiver, with all that a waiver implies—a meeting of minds and the intentional forbearance to enforce a right—clearly establishes that there was no waiver, but only an effort by defendant surreptitiously to do something which might in some way advantage him and enable him the longer to hold possession.    This is made manifest from the fact that defendant was not prepared to lease the building, had no other location or store in which to move his goods, and was desirous of remaining where he was until he could secure other accommodations."    It may be added that the allegations of defendant's cross-complaint still further negative the idea that there had been any waiver of plaintiff's right to the possession, or that defendant could have believed that there was a renewal of the tenancy.    The claim for damages set up in his cross-complaint was based upon the theory that plaintiff and her agent, Haile, were trying to obtain possession of the premises, even going to the extreme on the part of Haile of making

threats and creating disturbances in the store in order to induce defendant to evacuate.

All these things would seem to show conclusively a willful withholding of the premises on the part of respondent. Doubtless the word *"willful"* is used in different statutes with various shades of meaning, but herein the conduct of defendant in refusing to surrender possession was deliberate, intentional, and obstinate, with knowledge that the tenancy was terminated, and that he was holding over against the will and consent of the landlord. We think nothing more is required to constitute *willfulness* on the part of the tenant.

For many illustrations of the use of the term, and of the different significations attached to it, we may refer to Words and Phrases, volume 4, page 1293 (second series). Probably the following quotation therefrom is as instructive as any that could be selected: "The word *'willfully'* has various meanings and is used to denote the quality of an act, or the intent with which it is done. It is frequently used in the sense of intentionally, willingly, designedly, or with set purpose. When used in criminal statutes it usually means with a malevolent purpose or motive, with a wicked or criminal intent, especially if the forbidden act is one that is wrong in itself or involves moral turpitude; but if the forbidden act is not wrong in itself or does not involve moral turpitude, the word is then used in the sense of intentionally or purposely, so that when the act is so done it is done willfully. The word, however, should be given that meaning only which the context indicates was intended. (*United States* v. *Sioux City Stock Yards Co.,* 162 Fed. 556.)"

We do not think the full measure of the criminal code should be applied to a case like this—that it is necessary, in other words, to find that the act of the one holding over is with "a malevolent purpose," in order to justify the infliction of the penalty, but it is sufficient if his conduct be intentional, with knowledge of the termination of the tenancy, and that the holding over is against the will and consent of the landlord and not under a reasonable claim of right. Where the conduct of the tenant is characterized by good faith and a reasonable belief in his right to remain, the penalty should not, of course, be imposed, but we can find in the record no warrant for the application of this principle.

However, it is contended by respondent that "To recover treble rents the statute upon which plaintiff relies must be expressly referred to in the complaint." In support of this position he cites *Chipman* v. *Emeric,* 5 Cal. 239; *Barnes* v. *Jones,* 51 Cal. 303; *Stewart* v. *Sefton,* 108 Cal. 197, [41 Pac. 293]; 13 Cyc. 178; 8 R. C. L., p. 626.

The Chipman case involved an action of waste at common law. The jury found for the plaintiff and the lower court trebled the damages. The judgment was reversed and judgment ordered to be entered for the amount found by the jury. This was done upon the authority of Bacon's Abridgment, wherein the rule was stated as follows: "When treble damages are given by a statute, the demand for such damages must be expressly inserted in the declaration which must either recite the statute or conclude to the damage of the plaintiff against the form of a statute." It is claimed that this decision has never been overruled or criticised. However, in this connection it may be suggested that the case was decided under a different statute from the one before us, that in the present case there *is* a prayer for treble damages, and that no objection on this ground was made to the complaint or to the evidence herein.

The Barnes case was reversed really upon the ground that there was no intended trespass, but that the wrong was committed through an innocent mistake, although the court, in the course of the opinion, did declare: "But upon our construction of the statute, the complaint fails to state a case entitling the plaintiff to treble damages. It contains no averment that the trespass was willful, but only that the entry and cutting of the timber was wrongful and without the plaintiff's leave. The statute has no application to such a case; and though good as an action at common law, entitling the plaintiff to recover his actual damage, the complaint does not state a case in which the damages can be trebled."

The Stewart case approved the above-stated rule and held that "to entitle the plaintiff to treble damages, under section 733 of the Code of Civil Procedure, she must have proved her allegation that defendant willfully or maliciously removed the trees, knowing them to be the property of plaintiff."

The statement in Cyc. is: "Where damages sought to be recovered arise by virtue of statute, or the amount thereof is determined or augmented by reason of statutory enactments,

the complaint must allege facts sufficient to bring the case clearly within such statute, and as defendant should be apprised of the demand against him, it is the better practice, and in most jurisdictions necessary, that reference be made thereto, especially if the injured party has also a remedy at common law.''

The statement from Ruling Case Law is: ''And where one seeks to recover penal damages given by statute he must distinctly claim them in his declaration.  It is insufficient merely to set forth facts upon which a liability therefor might arise. If the case is one where there was also a common-law remedy, they must be claimed by reference to the statute. . . . If the wrongful act is of such a character or is attended by such conduct or *animus* of the defendant that the law authorizes the assessment of exemplary damages the complaint should so describe the act that it may appear therefrom to be such a case.''

We may accept the rule as requiring an allegation of willfulness or its equivalent, and it may be conceded that the complaint herein is defective in the respect indicated.  It might be thought that the element of willfulness is implied in the following allegations of the complaint: ''That on or about the 12th day of April, 1910, in the town of Suisun city, county of Solano, state of California, the said plaintiff gave to and served on said defendant her written notice terminating said tenancy and requiring defendant to deliver possession of said premises to said plaintiff on the first day of June, 1910, a copy of which notice is hereto attached, marked plaintiff's Exhibit 'B' and made a part of this complaint to which reference is hereby made.  That the said defendant failed, neglected, and refused on the first day of June, 1910, to deliver up said possession and continues in possession of same without the consent and against the will and wish of plaintiff; that said defendant now withholds the possession of said premises from the said plaintiff.''   But it is apparent that these allegations are consistent with the position that defendant was holding under a claim of right and in good faith, notwithstanding it was ''against the will and wish of plaintiff.''  If the additional averment had been made that the possession was retained under no claim of right, and not in good faith, there is no doubt the element of *willfulness* would have been tendered, although the word ''*willful*'' or its derivative might not have been used.

But it can be said that this defect of the complaint was virtually cured, and the issue presented by this averment in the answer: "Defendant alleges that from and after and including the said first day of June, 1910, he was in the peaceable possession of the said premises, and in retaining possession thereof for the said period he acted in good faith and under a claim of right and title thereto for the said period."

It would be proper, therefore, for the court to have made a finding as to this allegation of said answer. There was no such specific finding, although it may have been considered as included in the declaration that "said withholding was not willful on the part of the defendant."

It may be added that the case was tried upon the theory that said issue was presented, and in view of the foregoing considerations we are of the opinion that substantial justice has not been done.

Upon a new trial there may be, of course, some additional evidence tending to show that respondent acted in good faith, but the record before us leads to a different conclusion.

The judgment and order are reversed.

Chipman, P. J., and Hart, J., concurred.