[Civ. No. 3356.   Third Appellate District.—February 3, 1928.]

CARRIE M. LORENZ, Respondent, v. A. D. HUNT, Appellant.

.W. E. Davies for Appellant.

Erling S. Norby for Respondent.

FINCH, P. J.—This is an action for personal injuries. Plaintiff was given judgment and the defendant has appealed.

The defendant was a deputy sheriff at the time of the alleged injuries. April 15, 1924, he purchased about two acres of land on which there was a dwelling-house. The plaintiff and her husband were then in possession of the premises as tenants from month to month, and they continued in possession as such tenants until after the infliction of the injuries. The evidence shows that their possession was rightful and exclusive. Without their consent or permission the defendant put about 40 hogs on the premises in the latter part of August of that year. The plaintiff and her husband objected to the presence of the hogs on the lot, and it appears that the gate was left open at times, so that the hogs passed back and forth through it. The plaintiff made "complaint about the hogs to the health officer"

and the latter informed the defendant he "would have to get them away from there."

A witness for defendant testified that in the evening of September 8th "there were no hogs in the corral at all. Mr. Lorenz said to me, 'The first one that comes in this gate I will smash his head in with this club'; he had a club in his hand. . . . I went back and reported the conversation to Mr. Hunt that night. I told Mr. Hunt the pigs were in the alfalfa and Mr. Lorenz had turned them out and Mr. Lorenz had threatened me with a club." About 10:30 o'clock in the forenoon of September 9th, during the absence of Mr. Lorenz, the defendant, with three other men, appeared at the Lorenz place for the avowed purpose of putting the hogs in the inclosure. The defendant testified: "I was going to put them in there regardless of what Mrs. Lorenz wanted or didn't want. I was going to put them in the corral, through the big gate regardless of whatever resistance Mrs. Lorenz might put up. I had to take them through the big gate. From the way the boys were treated the night before, I expected there might be some trouble. I most always carry the handcuffs with me and the billy, I never carry any other arms of any kind."

The plaintiff testified: "Mr. Hunt came towards the gate, which was locked, and was attempting to open it. . . . I went out and told him not to open the gate, that his hogs were outside of the gate, to take them away, but not to come inside and not to drive them in, and he proceeded to untie the gate and open it, and I took hold of the gate and closed it. He took hold of the other side and we fought over that gate. . . . At last he struck or hit me, shoved me over against the fence . . . and I backed up probably 20 or 25 feet and Mr. Hunt all the time threatening me, saying he was coming in . . . He . . . said he would fix me, he would lay me out, such remarks as that, cursing me, and was in a violent temper. He reached for his back pocket. I didn't know what he was reaching for; and when he did that, I turned around and started toward the house and he after me, and at that he said, 'I will fix you.' I went up a few steps further to an old stove in the yard and got this revolver . . . and came back with the revolver in my apron pocket. He says, 'You have a gun, have you?' I says, 'Yes, I have a gun and I hope I don't have to use it,' and at that

he made a grab for my wrist, got hold of my hand with the gun in my hand, and said, 'You are under arrest.' . . . He showed me his badge, said he was a deputy sheriff of Yuba county and I was under arrest.'' The remainder of the story may be told in the language of the following findings, which are fully supported by the evidence, although the evidence is conflicting in some important particulars:

''That on September 9th, 1925, at the home of the plaintiff in the County of Yuba, State of California, the defendant, A. D. Hunt, did then and there violently assault the plaintiff, striking her with his fists, striking her with a blackjack or policeman's billy, and did then and there twist and wrench her right hand, thumb and wrist, and then and there forced handcuffs upon her and twisted and pulled said handcuffs violently so that said handcuffs cut and bruised her wrists, and dragged her by said handcuffs from her said premises to a road and then violently forced her into an automobile; that while forcing her into said automobile and while her legs protruded from the open door, defendant forcibly and violently slammed said door against her legs between the ankles and knees thereof so that the metal parts of said door cut and bruised her said legs; that defendant then forced the plaintiff to ride with him in said automobile and while she was so handcuffed, through and along the most public street in Marysville, in said County of Yuba, to the courthouse in said city and then forced plaintiff to go into said courthouse and kicked and beat and roughly handled her. By reason of all thereof plaintiff was rendered sick and sore, her wrists became bruised, black and blue, her right thumb became bruised, stiff and sore, and the plaintiff's legs where said automobile door was jammed against them, became bruised, black, sore and painful and that said bruises and soreness and pain remained, and that plaintiff suffered pain and injury therefrom for a period of many days thereafter, and that one of the said bruises on plaintiff's leg still remains and is apparent in the form of a slightly swollen and black and blue mark; that other parts and portions of plaintiff's limbs and body became and were for a period of many days thereafter, as a result of said assault, bruised, sore and painful; that plaintiff suffered by reason thereof, a severe shock to her nervous system so that she was for the period of a week thereafter sick and sore

and that she was, for a period of approximately a week thereafter, under the care of a physician for the treatment of said injuries that she then suffered; that plaintiff suffered great mental pain and anguish and was greatly humiliated and suffered by reason thereof, great shame.

"That the said plaintiff, Carrie M. Lorenz, did . . . have on her person a loaded revolver and that she did exhibit the same, but that she did so in the rightful and lawful defense of her said home; that defendant then and there was attempting to use all the force that it was possible for him to use to drive and place a number of hogs into and upon the premises occupied by the plaintiff as her home and of which she was in possession and rightfully entitled to the possession, and that plaintiff, in exhibiting said loaded revolver, only used such means as were necessary to keep the defendant from coming upon the said premises and placing the said hogs thereon. . . .

"That the . . . defendant had, at that time, armed himself with his deputy's badge, his handcuffs and his policeman's billy and with four other persons proceeded to the premises occupied by the plaintiff as her home with the intention of using all force that might be necessary to dispossess the plaintiff of a part of the said premises and to place a large number of hogs upon the said premises; that defendant had no right to enter upon said property or to place his hogs thereon; that when he met with resistance rightfully asserted by the plaintiff, he did, without any right or authority, and maliciously and oppressively, place the plaintiff under arrest, and did then and there maliciously and oppressively commit upon the person (of) the plaintiff the assault and various acts constituting the assault and battery hereinbefore set forth in these findings; and various of the acts constituting said assault were committed in the presence of the plaintiff's grown daughter.

"That by reason of the foregoing facts plaintiff has been damaged in the sum of Fifteen Hundred Dollars ($1500.00), and is entitled to the further sum of One Thousand Dollars ($1000.00) as exemplary damages."

The original answer contains denials of the allegations of the complaint which show liability on the part of the defendant. As a second and separate defense it contained a history of the alleged rights and acts of the parties which

culminated in the plaintiff's arrest by the defendant. It also contained an allegation that the defendant consulted "an attorney at law and was by said attorney advised to gather up his said hogs and place them back in the said corral." The court sustained the plaintiff's demurrer to the second defense, with leave to amend. Thereafter the defendant filed an amended answer, again denying the alleged acts showing wrongful conduct on his part and, as a separate defense, he alleged that his arrest of the plaintiff was for a misdemeanor committed in his presence, in that she "did then and there in the presence of said defendant and two or more other persons, wilfully and unlawfully draw and exhibit in a rude, angry and threatening manner, and not in necessary self-defense, a certain deadly weapon, to-wit, a loaded revolver." Appellant now complains that the court erred in sustaining the demurrer to the separate defense alleged in the original answer. ■ As a general rule, the amendment of a pleading after the sustaining of a demurrer thereto is a waiver of any error in the action of the court. (21 Cal. Jur. 128.) In this case, the separate defense, to which the demurrer was sustained, presented no issue which was not raised by the denials set forth in his first defense. ■ In a case such as this, the defendant may show that he acted under the advice of counsel, based upon a full disclosure of the facts. (*Walker* v. *Chanslor*, 153 Cal. 118, 124 [126 Am. St. Rep. 61, 17 L. R. A. (N. S.) 455, 94 Pac. 606].) The defendant, however, did not allege that he had informed his attorney of the facts or that the attorney had any knowledge thereof. Under such circumstances the advice of counsel is immaterial.

■ The fact that the defendant was a deputy sheriff in no manner excuses his conduct but rather aggravates his offense. Having no warrant or process of any kind, his entry in his official capacity would have been an abuse of official authority. His entry as a private citizen constituted a misdemeanor. (Pen. Code, sec. 418.) ■ The plaintiff had the right to use reasonable force to prevent the forcible and unlawful entry of the defendant, and neither the evidence nor the findings show an unreasonable use of force on her part. (*People* v. *Hubbard*, 64 Cal. App. 27 [220 Pac. 315]; *People* v. *Ross*, 19 Cal. App. 469 [126 Pac. 375].) ■ Adapting the language of the opinion in the

former of these cases, if it be assumed as alleged in the answer, that the plaintiff exhibited a loaded revolver in a "rude, angry and threatening manner, and not in necessary self-defense," still her act amounted to no more than a misdemeanor under section 417 of the Penal Code. She did not point the revolver at the defendant or any of his associates or attempt to shoot any of them, and the evidence indicates that she used it merely as a bluff.

The appellant contends that plaintiff was committing a misdemeanor in his presence and that, therefore, under the authority of section 836 of the Penal Code, in order "to preserve the peace and maintain order," he was justified in arresting the plaintiff without a warrant. Appellant overlooks the fact that he himself was engaged in the commission of a misdemeanor in the presence of the plaintiff and that therefore she, as a private citizen, under section 837 of the Penal Code, was authorized to arrest him without a warrant. Under such circumstances it is unnecessary to determine which one had the superior right to arrest the other. The defendant was the first wrongdoer, and the court was justified in believing from the evidence that the arrest was not made in good faith "to preserve the peace and maintain order," as claimed by the appellant, but to serve his private purpose of unlawfully getting possession of the premises.

A witness for the defendant testified that he had a conversation with the plaintiff on September 6th. He was then asked, "What was the conversation?" The court sustained the plaintiff's objection thereto. The ruling was clearly right. There was nothing in the question to indicate the subject matter of the inquiry and the record is entirely silent as to what the defendant desired to prove by the witness. In his opening brief the appellant states what he sought to prove by this witness, but this statement should have been made to the trial court, and it avails appellant nothing to make it here for the first time.

The court sustained plaintiff's objection to proof of statements claimed to have been made by plaintiff's husband but not shown to have been made in the presence of plaintiff. This was not error. Such evidence was not admissible as an admission against interest, because Lorenz was not a party to the action. Neither was it admis-

sible for the purpose of impeachment, because no foundation had been laid therefor.

Appellant attempts to show that the evidence is insufficient to support the findings by picking out such parts thereof as are most favorable to himself. Without stating appellant's contentions in detail it is sufficient to call attention to evidence in opposition to the more important of them.

Relative to the possession of the premises by plaintiff and her husband, the latter testified in part as follows: "I did not have a lease to the property. I rented from month to month. . . . It was divided into two parts. We occupied all of it. . . . I first rented these premises from Haney, and in the month of September, I also rented from Mr. Hunt, the defendant in this case. I occupied all the premises on the 9th of September, and I resided in a cabin on the south end of the premises. At one time, during the month of September, the north part of the premises, which was separated by a fence, contained a number of hogs. . . . They were supposed to belong to Mr. Hunt. . . . The hogs were not on the premises with my permission." The plaintiff testified that "the cross fence . . . was about 18 inches high, and was not hog tight. Frank and I built it for chickens to keep the hens and baby chicks in. . . . I did not have any conversation with Mr. Hunt relative to any agreement to put his hogs on that property. I made no offer of any kind. There was no agreement, and I told him repeatedly and told his men . . . to take his hogs out of there."

The court found that the defendant kicked the plaintiff. She first testified that he kicked her and later she explained, "He didn't hit me with his foot but with his knee and brought it against my rear as I went through the door." The distinction does not seem to be material, viewed in the light of the many acts of violence which the court found the defendant committed.

The plaintiff testified: "He did not strike me *at the time he put the handcuffs on,* he did not hit me with his fist, he just pummeled me." Appellant quotes all of this statement, except the words herein italicized, and then argues that the statement shows that the court was in error in finding that the defendant struck the plaintiff with his fists.

The very sentence, of which appellant quotes a part only, without indicating that anything was omitted, limits the answer to "*the time he put the handcuffs on.*" Relative to other stages of the struggle, the plaintiff testified that the defendant "struck or hit me," "dragged me out the gate," "struck me in the stomach," "struck me with his fist on the chest" and "knocked me against the fence."

Appellant's statement that "there is no evidence whatever that the defendant was attempting to use all the force possible to drive the hogs in plaintiff's home or any other place" is fully refuted by his own testimony hereinbefore quoted.

Further analysis of the evidence is unnecessary. A careful reading of the transcript thereof shows that the findings are supported by substantial evidence on every material issue. It is true that much of the evidence is squarely contradicted by other substantial evidence, but the trial court was in a better position to pass upon the weight thereof and the credibility of the witnesses than is an appellate court.

▉ It cannot be held that the amount awarded the plaintiff as actual damages is excessive. In addition to plaintiff's physical injuries, she suffered gross indignities and great humiliation at the hands of defendant, according to the findings of the court, which, being supported by the plaintiff's testimony, must be accepted as true on this appeal.

▉ The complaint contains no allegation of oppression, fraud or malice on the part of defendant nor any demand for exemplary damages. There is no basis, therefore, for the award of punitive damages. (8 Cal. Jur. 894.) It is true that there is sufficient evidence to show malice and the court found that the defendant's assault upon the plaintiff and her arrest by him were malicious and oppressive, but it cannot be held that the case was tried upon the theory that the question of punitive damages was in issue, because the evidence tending to show malice and oppression was admissible in support of the allegation of actual damages. "It is frequently the case that evidence which is admissible to establish one issue may tend to establish another issue than that for which it is offered, and it is a rule that evidence so introduced is available to establish any of the issues in the case. This rule is, however, limited to the issues which

are to be tried. If the other issue that the evidence may tend to establish is not before the court the evidence must be limited to the actual issue. The fact of its introduction cannot be used to establish an issue that the parties have not made in their pleading. The court would not be authorized to consider it as establishing an issue that was not before it for trial. Even a finding upon such evidence would be disregarded in determining the correctness of the judgment." (*Riverside Water Co.* v. *Gage,* 108 Cal. 240, 245 [41 Pac. 299]; *Crescent Lumber Co.* v. *Larson,* 166 Cal. 168, 171 [135 Pac. 502].)

The amount of the judgment is reduced from two thousand five hundred to fifteen hundred dollars, with interest thereon and costs as therein provided, and, as so modified, the judgment is affirmed, appellant to recover his costs of appeal.

Hart, J., and Plummer, J., concurred.