[S. F. No. 17618.   In Bank.   Mar. 31, 1948.]

JOHN J. VAUGHN, Respondent, v. WILLIAM JONAS, Appellant.

W. H. Morrissey and John J. Taheny for Appellant.

F. E. Hoffman for Respondent.

SCHAUER, J.—Defendant, avowedly in self-defense, shot and severely wounded plaintiff. Thereafter, having partially recovered from his wounds, plaintiff filed this action for damages; in it he contends that defendant acted not in self-defense but maliciously and without just cause. At the trial plaintiff prevailed; a jury awarded him $5,500 as compensatory and $4,500 as exemplary damages; defendant appeals from the judgment entered on the verdict. As grounds requiring reversal of the judgment defendant urges that the trial court erred to defendant's prejudice in the admission of certain evidence; in giving certain instructions concerning self-defense; in failing to give or in modifying certain other instructions relative to self-defense, requested by defendant; and in instructing the jury as to exemplary damages. It is also contended that the pleadings do not support the award of exemplary damages. We have observed that the evidence relevant to the issues of provocation, justification and malice or lack thereof, is sharply conflicting but after scrutiny of the entire record and consideration of all of the points urged, we have concluded that no prejudicial error is shown and that the judgment must be affirmed. The reasons for our conclusions become manifest in the discussion which follows.

On the day of the shooting, March 16, 1942, defendant owned and with his wife operated a bar and restaurant known as "Dick's Tower" and located in Brisbane, San Mateo County, California. The premises were also used as living quarters by defendant and his wife.

Plaintiff and two men companions entered the bar at about 1:15 in the morning. Each of the three ordered and was served beer. Plaintiff testified that they had visited other taverns during the night of March 15, and early morning of the 16th, and that he had drunk five to eight glasses of beer "all together." The three carried the beer to a pinball machine "right next to the bar" and began playing the machine. On it were one or two small signs, apparently about 3 inches by 4 inches, which read "For amusement only, no pay-off." The machine was so constructed and adjusted that if the player

made a certain score he won the right to one or more free games. After plaintiff and his companions had played for 15 or 20 minutes the machine registered 74 or 75 free games. They asked defendant, who was behind the bar, to pay them off in cash; defendant pointed to the signs and stated ''That machine doesn't pay off, it is for amusement only,'' and suggested that they ''play off'' the free games.

Plaintiff's testimony as to the subsequent events leading up to the shooting is as follows: He put another nickel in the machine ''but it wouldn't work, nothing would work anymore, the machine wouldn't pay-off the free games.'' Plaintiff then told defendant the machine would not work and that ''we wanted the money'' and defendant ''came out from behind the bar and put a nickel in it, and it wouldn't work for him either. He went back behind the bar again, and we started giving him a panning . . . [W]e started telling him it was a cheap place . . . we used a few swear words . . . I did use a certain amount of profane language.'' Neither he nor his companions made ''threats to break the machine, or wreck the place.'' Defendant ''didn't say anything at all'' in response to plaintiff's profane language; he ''was very quiet, and kept working and walking up and down behind the bar.'' Plaintiff then noticed that ''it was getting close to two o'clock'' and suggested to his two companions ''Let's go.'' Plaintiff's companions ''walked out the doorway'' and plaintiff ''went in the men's room, lavatory'' where he remained ''only a minute'' and then went outdoors to join the other two men in their car. Plaintiff ''was just about to step in the car when'' defendant called to him ''from the doorway.'' Plaintiff turned around and saw defendant ''on the top step.'' Defendant ''asked me if I wanted to get paid,'' and then said ''Here's your pay you son-of-a-bitch'' and shot plaintiff in the stomach. (The gun was shown to be a .38 calibre police special revolver.) Plaintiff stated that before the shooting he had engaged in various sports as an amateur and as a professional and, in particular, that at the time of the altercation in question he was a professional boxer.

One of plaintiff's companions, John Mahoney, who was driving the automobile in which the three men had arrived at defendant's premises, corroborated plaintiff's story that after the three had gone outside following the argument, defendant shot plaintiff from the doorway of the bar just as plaintiff was ''getting in the car'' to leave. Over objection, plaintiff was also permitted to prove that in another court ''the defend-

ant had pleaded guilty to a misdemeanor, to wit, simple assault, because of the shooting.''

Defendant related the following account of the shooting: After plaintiff had stated that the machine was out of order and would not play off the free games, defendant told him ''I am sorry I am not allowed to pay off cause it would be gambling . . . [T]hen . . . they became very violent, very abusive and used language that I wouldn't repeat here. They . . . threatened to break up the place, and called it a cheap joint and told me they would wreck this joint and told me they would get me too.'' Defendant did not refuse to pay because of the amount of money involved, ''it was my license, I never did pay off.'' Defendant did not ''go out from behind the bar at any time''; his wife ''went over and showed them the sign.'' Plaintiff and his companions were ''About that time . . . loud and very threatening . . . Mr. Vaughn . . . had his hands on the bar and said, 'You are going to pay me,' —as though he was coming over the bar, so I got away from them and went down to where the gun was, reached in . . . the drawer back of the bar, and stuck it in my belt so they could have seen it, I don't believe they did. I came back up and I stayed away from where they could reach me. My wife said, 'I will call the sheriff's office.' She went to the 'phone . . . and said, 'I have the sheriff's office.' Just at that time I heard one of them say, 'come on, let's get out of here.' Then I said to my wife, 'Hang up, they're leaving.' . . . Mr. Vaughn turned around—the three of them were together half way to the door and Vaughn turned around and threatened me. He said, . . . 'I'll get you you son-of-a-bitch, you will wish you had paid off,' . . . Well, they were very, very violent and did pull the machine out from the wall, picked it up and dropped it on the floor, and made a terrible racket. I didn't move as I thought they really meant what they said—they were going to wreck the place there.'' Defendant ''put the gun in his belt at that time . . . in case they did come over the bar and I needed it for protection . . . [of] My property and my life.'' The three men then left together by way of the front door and defendant ''heard them start the car up . . . shift gears—and when I was reasonably sure . . . they had driven away . . . I came from behind the bar and started to close the place.'' As defendant was about to close the front door he ''glanced out of the door and there was the car parked and a few feet this side of the car, between me and the car, was

Vaughn and he had this rock in both hands and he was coming towards me and I hollered to him, I said, 'Stop, put down that rock I have a gun,' but he kept right on coming. About that time—this all happened mighty quick—immediately after that Mrs. Jonas was at my side. She was screaming and hollering. . . About the time I got through telling him I had a gun I reached and pulled the gun out . . . and thought I would stop him by firing at his feet. He did stop when I fired the gun; dropped the rock and turned around and ran [20 or 25 feet] back to the automobile in a sort of crouching position . . .'' Plaintiff was within 3 or 4 feet of ''the bottom step'' when defendant fired. Defendant ''shot to stop him; if he hadn't stopped I would have shot again . . . As soon as he got to the car some one opened the door to the car and he got in the car and they drove off.'' Defendant then picked up the rock which ''was lying right at the foot of the steps'' and ''laid it on the steps . . . then I closed the door.'' He did not know until some two or three hours later when he was visited by a deputy sheriff that his shot had struck plaintiff.

Defendant's wife corroborated his testimony as to the events preceding the shooting. She testified further that after defendant shot, plaintiff ''ducked and ran in a crouching position to the car . . . and . . . got in the car, the door was shut and drove off. Mr. Vaughn didn't make a noise . . . and didn't fall. . . . Mr. Jonas and I didn't have any idea he had been hit.''

Ross Martin, a customer in defendant's bar when plaintiff entered it, testified that he heard the ''argument'' develop over the machine's ''not paying off.'' Plaintiff and his two companions ''were cussing and said they were going to wreck the machine and joint . . . they pulled the machine from the wall.'' The witness heard no threats against defendant personally. Mrs. Jonas went to the telephone back of the bar and the men left. Defendant then walked ''leisurely'' to the door to close it. The witness heard a ''noise,'' went to the door and saw a rock on the porch. Defendant brought the rock inside and said ''they were going to throw the rock at him or did throw it I don't know which.'' The witnesses Peter D. Cutney and Richard Trantham also gave testimony which tends to corroborate at least certain elements of defendant's version of the affray.

A pinball machine expert testified that on the afternoon of March 16 (the day of the shooting) he examined the designated pinball machine which was installed in Dick's Tower;

that he found it out of order; that a small hole had been drilled in the machine "on the right hand side close to the players end"; that a wire could have been put in the hole which would "cause the machine to start running up a lot of games as high as 70, or 74" and would also be "liable to shortcircuit" it and blow out a fuse.

From the evidence as above related it is obvious that the area of its conflict is relatively small but that within its scope the clash is sharp. Thus, it may be said that substantially the sole, ultimate issue of fact was the question as to whether defendant in shooting plaintiff was actuated by reasonable apprehension or by malice. The evidence cannot be held to be as a matter of law insufficient to support a conclusion either way; we are bound, therefore, to accept the jury's determination of the issue. (*Estate of Bristol* (1943), 23 Cal.2d 221, 223 [143 P.2d 689]; *Cate* v. *Certainteed Prod. Co.* (1943), 23 Cal.2d 444, 448 [144 P.2d 335]; *Estate of Teel* (1944), 25 Cal.2d 520, 526 [154 P.2d 384]; *Fackrell* v. *City of San Diego* (1945), 26 Cal.2d 196, 207 [157 P.2d 625, 158 A.L.R. 625]; *Viner* v. *Untrecht* (1945), 26 Cal.2d 261, 267 [158 P.2d 3]; *Pewitt* v. *Riley* (1945), 27 Cal.2d 310, 313 [163 P.2d 873]; *De Young* v. *De Young* (1946), 27 Cal.2d 521, 526 [165 P.2d 457]; *Millsap* v. *National Funding Co.* (1944), 66 Cal.App.2d 658, 665 [152 P.2d 634]; *Southern Calif. Freight Lines* v. *State Bd. of Equalization* (1945), 72 Cal.App.2d 26, 29 [163 P.2d 776]; *Berry* v. *Chaplin* (1946), 74 Cal.App.2d 652, 663 [169 P.2d 442]; *Medina* v. *Van Camp Sea Food Co.* (1946), 75 Cal.App.2d 551, 556 [171 P.2d 445]; *Seidenberg* v. *George* (1946), 76 Cal.App.2d 306, 308 [172 P.2d 891]; see also cases reviewed in dissenting opinion in *Isenberg* v. *California Employ. Stab. Com.* (1947), 30 Cal. 2d 34, 46-48 [180 P.2d 11].) But in the light of the clash of the testimonies as noted we carefully consider the assignments of error.

Defendant urges three grounds for reversal, which he states as follows: 1. "The plaintiff's counsel was guilty of prejudicial misconduct and it was prejudicial error for the trial court to permit him to show that the defendant had pleaded guilty to a misdemeanor, to-wit, simple assault, because of the shooting"; 2. "The trial court deprived the defendant of a substantial defense by refusing to instruct the jury that, in the face of actual or apparent danger at the hands of the plaintiff, he could use not only such force as

was actually and reasonably necessary, but also such force as appeared to be reasonably necessary, and by telling the jury, instead, that the burden was on the defendant to show that he had used no greater force than was necessary''; 3. "It was prejudicial error for the trial court to instruct the jury that punitive damages could be awarded, and that part of the judgment which is based upon the verdict of $4500 punitive damages is outside the pleadings and issues and therefore contrary to law." Each of the three above-stated contentions is hereinafter discussed.

1. *It Was Not Error to Permit Plaintiff to Show That Defendant Had Pleaded Guilty to Simple Assault.* Over objection plaintiff elicited from defendant testimony that he had pleaded guilty to a misdemeanor assault based on the shooting. In explanation of the plea defendant also testified that following the shooting he first pleaded not guilty to a charge of assault with intent to commit murder; that on advice of counsel and with the assurance that he would be saved the expense of a jury trial and could later secure a dismissal of the charge under section 1203.4 of the Penal Code he subsequently pleaded guilty to a misdemeanor assault; that sentence on that plea was suspended, defendant was granted probation and thereafter the court granted his motion to withdraw the guilty plea and "to dismiss the entire action and set aside judgment."

Section 1203.4 of the Penal Code reads as follows: "Every defendant who has fulfilled the conditions of his probation . . . shall at any time thereafter be permitted by the court to withdraw his plea of guilty and enter a plea of not guilty; . . . and . . . the court shall thereupon dismiss the accusations or information against such defendant, who shall thereafter be released from all penalties and disabilities resulting from the offense or crime of which he has been convicted . . .; provided, that in any subsequent prosecution of such defendant for any other offense, such prior conviction may be pleaded and proved and shall have the same effect as if probation had not been granted or the accusation or information dismissed." Defendant argues that inasmuch as the criminal charges against him were dismissed under the procedure set forth in the quoted section, the provision of that section that he should "thereafter be released from all penalties and disabilities resulting from the offense or crime of which he has been convicted" operated to protect him against the admission into evidence in this civil action of the fact that he had pleaded

guilty to the misdemeanor offense. To support his argument defendant cites *People* v. *Mackey* (1922), 58 Cal.App. 123, 128-131 [208 P. 135]. At the time that case arose the statutory provisions relied upon by defendant were found in section 1203 of the Penal Code. In that case the defense attempted to introduce into evidence for the purpose of impeaching a prosecution witness the record of a case in which the witness had pleaded guilty to a felony, had been admitted to probation and had fulfilled the terms thereof, and pursuant to section 1203 of the Penal Code had secured a dismissal of the charges. The trial court sustained an objection to such evidence and on appeal the ruling was upheld on the ground (pp. 130-131 of 58 Cal.App.) "that the legislature intended in a legal sense, by directing a dismissal . . . to wipe out absolutely the entire proceeding in question in a given case and to place the defendant in the position which he would have occupied in all respects as a citizen if no accusation or information had ever been presented against him. Such is the legal effect of the dismissal of a criminal charge before conviction, and we are convinced that the law-making body intended, by section 1203, that the same effect should attend a dismissal after conviction . . . [T]he legislature intended by the enactment of section 1203 that no convicted person discharged after probation thenceforth should be regarded as one possessed of the degree of turpitude likely to affect his credibility as a witness."

In the present case evidence of defendant's plea of guilty was not offered for impeachment purposes, however, but as an admission of a party against interest. Hence the problem of its admissibility differs from that in the Mackey case. That the record of such a plea, although not held by the court to be factually conclusive, "is an admission on the part of the defendant, and as such is admissible" against him in a civil action growing out of the same offense is established in this state. (*Olson* v. *Meacham* (1933), 129 Cal.App. 670, 675 [19 P.2d 527]; see also *Fawkes* v. *Reynolds* (1922), 190 Cal. 204, 213 [211 P. 449]; *Burbank* v. *McIntyre* (1933), 135 Cal.App. 482, 485-486 [27 P.2d 400]; *Langensand* v. *Obert* (1933), 129 Cal.App. 214, 218 [18 P.2d 725].) As stated in the last-cited case, at page 218 of 129 Cal.App., the record is admitted "not as a judgment establishing the fact, but as the deliberate declaration or admission against interest that the fact is so; in other words, a solemn confession of the very matter charged

in the civil action.'' (See also *In re Phillips* (1941), 17 Cal. 2d 55, 61 [109 P.2d 344, 132 A.L.R. 644].) We are of the view that the fact of defendant's plea of guilty was admissible in the present action; it tended to some extent to support plaintiff's charges; its weight and significance under the circumstances were for the jury to determine.

2. *The Instructions Pertaining to the Right of Self-Defense Unduly Limited That Right but the Error is not Shown to be Prejudicial.* ■ The burden of the court in reviewing this phase of the appeal is unnecessarily aggravated by the improper manner in which the record is made up. Each instruction should be identified by a number and should indicate by whom it was requested or that it was given by the court of its own motion; on each requested instruction the trial judge should endorse the fact as to whether it was given or refused or given as modified, with the modification, if any, clearly indicated. In the record before us the reporter's transcript sets forth in the form of a single instruction, covering approximately seven pages, a congeries of propositions of law which apparently was designed to encompass the entire charge given to the jury; there is in it no indication as to who requested statement of the many and varying principles of law therein declared; thereafter, under the heading ''Instructions Requested by Plaintiff,'' there is copied a group of instructions which in large part constitute but a repetition of the charge previously set forth; following this group is still another under the heading ''Instructions Requested by Defendant.'' Under this latter heading the matter copied is likewise in large part included in the unitary charge first mentioned. Whether the reporter simply copied the duplicated instructions twice or whether the trial judge read them twice is not stated. None of the requested instructions given, refused or modified bears an identifying number and none of those marked modified indicates how or in what respect it was modified.

Since 1872, it has been the law and the accepted practice of judges and lawyers that ''Where either party asks special instructions to be given to the jury, the court must either give such instruction, as requested, or refuse to do so, or give the instruction with a modification, in such manner that it may distinctly appear what instructions were given in whole or in part.'' (Code Civ. Proc., § 609; see also Code Civ. Proc., § 608.) The record produced here has the undesirable attributes of being both repetitious and inadequate; it subjects

a party to unnecessary and unwarranted expense and it burdens the court with a tedium of labor in searching and comparing to ascertain that which in a properly prepared record should be manifest at a glance.

Concerning the right of one to defend his person, family, and property against unlawful attack the court instructed as follows:

*"The burden of proof to establish self-defense is always with the defendant, and he must show that he used no greater force than was necessary to repel the alleged attack of the plaintiff, if you so find that plaintiff did attack the defendant.*

"You are instructed that acts done in self-defense alone are not assaults. A person cannot assault another in self-defense; and any acts done in self-defense cannot be an assault.

*"Provocative acts, conduct, former insults, threats, or words, if unaccompanied by any overt act of hostility, do not justify an assault or battery no matter how offensive or exasperating, nor how much they may be calculated to excite or irritate one.*

*"Section 50 of the Civil Code of the State of California provides as follows:*

*" 'Any necessary force may be used to protect from wrongful injury, the person or property of one's self, or of a wife, husband, child, parent or other relative, or member of one's family, or of a ward, servant, master or guest.'*

*"However, I instruct you that the right to use force to protect one's person, or the person of another is always limited by the condition that the force used must be no more than is reasonably adequate and necessary to the occasion.*

"You are instructed that the right of the defendant to use force upon the plaintiff at the time and place in question did not depend upon the question whether the plaintiff actually intended or attempted to inflict serious injury upon the defendant or his wife. If the circumstances as they appeared to the defendant were such that a reasonable person in the position of the defendant would be justified in believing that the plaintiff had the present ability to inflict serious injury upon him or his wife and that the plaintiff intended to do so, then you are instructed that the defendant was justified in using such force as was reasonably necessary to defend the person of the defendant, his wife, or his property.

"You are instructed that if you find from the evidence

that the plaintiff was advancing toward the defendant with a large stone or piece of concrete in his hand and if you further find from the evidence that the defendant was in or upon his own premises and that the circumstances were such as to justify a reasonable man in the position of the defendant in believing that the plaintiff had the present ability and intention to inflict serious injury upon the defendant or his wife, then, the defendant was entitled to remain standing where he was and was entitled to use such force as was reasonably necessary to protect himself and his wife from injury, and under such circumstances, there was no duty on the part of the defendant to retreat.''

By a process of comparing, sentence by sentence, the unitary charge with the instructions grouped under the headings ''Instructions Requested by Plaintiff'' and ''Instructions Requested by Defendant'' we have ascertained that certain portions of the above-quoted instruction are identical in substance with instructions which were requested by plaintiff and other portions of the charge are the same as certain instructions which were requested by the defendant. We have shown above in italics the portions which duplicate the requests by plaintiff and in plain type those which may be attributed to defendant. It also appears that the two sentences ''You are instructed that acts done in self-defense alone are not assaults. A person cannot assault another in self-defense; and any acts done in self-defense cannot be an assault'' are identical with two sentences in an instruction proposed by the defendant and reading in its entirety as follows:

''The plaintiff seeks to recover from the defendant for an alleged assault by the use of a gun. *[You are instructed that acts done in self-defense alone are not assaults. A person cannot assault another in self-defense; and any acts done in self-defense cannot be an assault.] Therefore, if you find from the evidence that the plaintiff was advancing toward the defendant with a piece of concrete in his hands at the time of the shooting under such circumstances that a reasonable person in the situation of the defendant would have reasonable grounds for believing that the plaintiff intended to attack and injure the defendant with said piece of concrete, and if you further find from the evidence that the defendant at said time was acting in defense of his person at the time he fired the gun and that there were reasonable grounds for believing

---

*The bracketed portion is the part which was included in the charge given by the court.

that the firing of said gun was reasonably necessary for his defense, then, if you so find, your verdict shall be in favor of the defendant and against the plaintiff.''

It further appears that the court refused the following instruction requested by defendant:

''You are instructed that the question whether the defendant was justified in shooting the plaintiff does not depend on whether he intended to shoot at the plaintiff or at the ground, but on whether the circumstances, as they appeared to the defendant, were such that a reasonable person in the position of the defendant would have apprehended that he was in imminent danger of sustaining serious injury at the hands of the plaintiff. If you find from the evidence that the circumstances, as they appeared to the defendant, were such that a reasonable person in his position would have been justified in concluding that he was in such danger, then you are instructed that in using all the force reasonably necessary to prevent such injury, the defendant incurred no civil liability to the plaintiff; and if you further find from the evidence that a reasonable person in the position of the plaintiff [sic] would have been justified in concluding that it was reasonably necessary for his protection either to fire said gun at the ground or at the plaintiff, then you are instructed that under such circumstances the defendant is not liable in damages to the plaintiff for either aiming and firing said gun at the ground or at the plaintiff.''

Defendant urges that he was entitled to the requested and refused instructions on the ground that the jury were not otherwise specifically or adequately informed that the amount of force which he was permitted to use to repel the claimed attack upon himself and his wife was that which under the circumstances would *appear* reasonably necessary even though such force might have been greater than actually was reasonably required. ■ Particular complaint is made of the fact that in the charge which it did give the court specifically told the jury that defendant ''must show that he used no greater force than was necessary to repel the alleged attack'' and that ''the right to use force to protect one's person, or the person of another is always limited by the condition that the force used must be no more than is reasonably adequate and necessary to the occasion.'' The two last-quoted statements are clearly erroneous and should never be given. The right of self-defense is not limited by actualities. ■ The

correct rule (quoted in *Fraguglia* v. *Sala* (1936), 17 Cal.App. 2d 738, 744 [62 P.2d 783]) is stated in 4 American Jurisprudence, page 152, section 50: ''Generally stated, the force that one may use in self-defense is that which reasonably appears necessary, in view of all the circumstances of the case, to prevent the impending injury.'' (See also 40 C.J.S. 985, § 115.) In emphasizing that the law of self-defense is a law of necessity courts should never lose sight of the fact that the necessity may be either real or apparent.

█ The error pointed out would not necessarily have been entirely cured by giving in full the instructions which the defendant requested and which were refused in whole or in part; such refused instructions go little or no farther toward elucidating the point in question than the statement which the court did give that ''the right of the defendant to use force upon the plaintiff at the time and place in question did not depend upon the question whether the plaintiff actually intended or attempted to inflict serious injury upon the defendant or his wife. If the circumstances *as they appeared to the defendant* were such that a reasonable person in the position of the defendant would be justified in believing that the plaintiff had the present ability to inflict serious injury upon him or his wife and that the plaintiff intended to do so, then . . . the defendant was justified in using such force as was reasonably necessary.'' (Italics added.) The last-quoted statements, which are correct as far as they go, are to that extent inconsistent with the earlier (erroneous) ones on the same subject. ''Inconsistent instructions have frequently been held to constitute reversible error where it was impossible to tell which of the conflicting rules was followed by the jury. [Citations.]'' (*People* v. *Dail* (1943), 22 Cal.2d 642, 653 [140 P.2d 828]; *People* v. *Peterson* (1946), 29 Cal.2d 69, 79 [173 P.2d 11]; *People* v. *Sanchez* (1947), 30 Cal.2d 560, 570 [184 P.2d 673].) Here, however, it does not seem reasonably possible that the jury were misled by the error in question to defendant's prejudice. From the verdict awarding punitive damages it appears that the jury necessarily found that the defendant acted maliciously. Exemplary damages, under the instructions given on that subject, could not have been awarded unless the jury found that the shooting was actuated by malice; if it was actuated by malice it was unjustified on any theory. (See 40 C.J.S. 1003.) We do not find any persuasive basis for believing that the finding as to malice was influenced to any extent whatsoever by the erroneous

statements of law. In view of the verdict, therefore, and our duty under section 4½ of article VI of the state Constitution, we cannot hold that the error in question requires reversal of the judgment. (We do not imply, by anything hereinabove said, that the instructions which were requested by the defendant and refused in whole or in part, should have been given in the form in which they appear above. Each is a formula instruction; each is incomplete in some particular; and each invades to some extent the province of the jury.)

3. *The Issue as to Malice, With Punitive Damages Based Thereon, Was Properly Submitted to the Jury.* █ The burden is on the appellant in every case affirmatively to show error and to show further that the error is prejudicial; █ likewise, the presumptions declared in sections 1962 and 1963 of the Code of Civil Procedure must be indulged in favor of sustaining a judgment. To presume in favor of error or prejudice would be directly contrary to the policy of this state as declared in section 4½ of article VI of the Constitution and to the admonitions of section 475 of the Code of Civil Procedure. It follows, therefore, that, regardless of the state of the record, attacks on a judgment based on technical defects in pleadings or procedure are not favored by reviewing courts, and it is in the light of our constitutionally declared policy and the statutory admonitions that we must examine the record to ascertain whether defendant has sustained the appellant's burden of establishing error and prejudice.

█ Defendant's claim of error in relation to the award of exemplary damages is based on the proposition that the plaintiff's complaint does not expressly plead malice or pray for such damages. The only allegation of such complaint which is claimed by plaintiff to charge malice is the averment that on the 16th day of March, 1942, ''defendant wrongfully, unlawfully and violently assaulted the plaintiff by firing at plaintiff a loaded revolver, the bullets from which passed through plaintiff's abdomen . . . causing serious and severe wounds . . .'' However, in the answer filed by defendant it is specifically pleaded that immediately preceding the shooting, the plaintiff ''ran toward defendant and his wife with a rock weighing about sixteen pounds in his hands, and at the same time threatened to strike and kill the defendant and his wife with said rock . . . That . . . in self-defense, defendant discharged said pistol in the direction of the plaintiff . . . That defendant in necessary defense of his body and

person and the body and person of his wife, to prevent the plaintiff from assaulting them with said rock, used a pistol to defend himself and wife, and in so doing, defendant did necessarily and unavoidably discharge said pistol in the direction of the plaintiff, but only did so in self-defense of himself and his wife . . . [D]efendant used only the necessary force in preventing plaintiff from striking him and his wife with said rock.''

The record further discloses that plaintiff requested that the jury be instructed that ''If, under the courts instructions, you find said plaintiff entitled to a verdict, in addition to the special and exemplary damages you may award him,'' etc.; that he requested an instruction reading, ''I instruct you that if you find that the defendant made any statements at the time he committed the act of shooting the plaintiff, if you find he did shoot him, then you may consider any language used by him at the time of the shooting as bearing upon the question of his malice in shooting plaintiff''; likewise, it also appears that the plaintiff requested the following instruction: ''I instruct you that Section 3294 of the Civil Code of the State of California provides as follows:

'' 'In an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, expressed or implied, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.'

''Under the provisions of this code section it is the rule that a jury may allow punitive damages if they believe from the evidence that a malicious intent exists. Evidence of the language used, if any, at the time of the assault, may be considered by the jury in determining the issue as to whether or not the defendant acted maliciously.

''In the event that you find that the defendant shot the plaintiff maliciously then the amount of exemplary damages you may award plaintiff is in your discretion. I further instruct you that the condition of the plaintiff subsequent to his injury may be taken into consideration by you in determining the amount of exemplary damages, providing the case is a proper one for the granting of such damages.'' The substance of the above-quoted requested instructions (with some changes which are immaterial to this discussion) appears to have been included in the charge which was given.

Concerning the instructions pertaining to exemplary damages defendant says: ''These instructions were prejudicially

erroneous for several reasons. First of all, malice was not pleaded. Punitive damages were not alleged nor prayed for. The case was not tried on the theory that malice existed. Secondly, the court at no point defined malice . . . The defendant requested no instructions concerning malice for the simple reason that malice was outside the issues.'' We are satisfied for reasons hereinafter elucidated that defendant is mistaken in the substance of his contentions above-quoted.

It is obvious that the plaintiff in pleading that ''the defendant wrongfully, unlawfully and violently *assaulted* the plaintiff by firing at plaintiff a loaded revolver, the bullets from which passed through plaintiff's abdomen and other parts of his body, causing serious and severe wounds to plaintiff'' (italics added), has actually pleaded a battery[1] (Pen. Code, § 242) rather than a mere assault[2] (Pen. Code, § 240). While the verb ''assaulted'' is inaccurately used in its technical legal sense, the meaning of the pleader is made clear by the context. ''The words 'malice' and 'maliciously' import a wish to vex, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law.'' (Pen. Code, § 7(4).) ''A malicious and guilty intent'' is to be conclusively presumed ''from the deliberate commission of an unlawful act, for the purpose of injuring another.'' (Code Civ. Proc., § 1962(1).) It seems to us that the charge that defendant committed on plaintiff a battery by gunshot ''wrongfully, unlawfully and violently,'' necessarily imputes to defendant ''a wish to . . . injure another person'' and ''an intent to do a wrongful act.'' Malice, therefore, is inferentially pleaded.

In this connection it is also to be noted that the sole defense pleaded by defendant (the substance of which is hereinabove quoted) is self-defense. This is an affirmative defense which is deemed controverted (Code Civ. Proc., § 462) and which, regardless of the adequacy of the complaint as charging malice, authorizes proof by the plaintiff that the act of defendant was actuated by malice rather than solely in defense of the person or property of his wife or himself.

A defect in a complaint may be cured, as against attack on appeal, by an answer which tenders the otherwise un-

---

[1]Penal Code, section 242: ''A battery is any willful and unlawful use of force or violence upon the person of another.''

[2]Penal Code, section 240: ''An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another.''

pleaded issue. (8 Cal.Jur. 893; *Noakes* v. *City of Los Angeles* (1918), 179 Cal. 38, 40 [175 P. 409]; *Alden* v. *Mayfield* (1917), 33 Cal.App. 724, 729-730 [166 P. 382]; see also *Macdougall* v. *Maguire* (1868), 35 Cal. 274, 279 [95 Am.Dec. 98].) We are satisfied for the reasons which we have noted that malice was at all times an issue encompassed by the pleadings.

Defendant argues, however, that since the complaint neither expressly alleges malice nor specifically mentions exemplary damages, he was taken by surprise when the issue as to such damages was submitted to the jury. In the state of the record shown we find some justification for counsel's argument but not grounds for sustaining it on appeal. The record independently of the pleadings, as well as in conjunction with them, tends to show that the case was tried on the theory that malice was an issue as a basis for exemplary damages. The testimony as to the dispute between plaintiff and defendant over the former's demand for cash payment of his winnings at the marble game furnishes a background from which ill feeling can be inferred; the testimony of plaintiff that defendant as he fired the wounding shot said, ''Here's your pay you son-of-a-bitch,'' tends to negate the theory of self-defense and to establish that the act was malicious. The very fact that plaintiff was shot, at close range, in the abdomen rather than in the foot or a limb may well have been deemed significant on the issue of malice. As hereinabove shown, the allegations of the answer, regardless of the sufficiency of the complaint, disclose that the controlling factual issue to be litigated was the question as to whether defendant in shooting plaintiff acted justifiably or maliciously. The pleadings therefore, whether viewed alone, together, or in the light of the evidence adduced, justified the proposal of instructions covering the effect of malice. The requested instructions which touch upon the subject of malice all relate likewise to the subject of exemplary damages. Section 607a of the Code of Civil Procedure provides that ''In every case which is being tried before the court with a jury, it shall be the duty of counsel for the respective parties, *before the first witness is sworn,* to deliver to the judge . . . and serve upon opposing counsel, all proposed instructions to the jury covering the law as disclosed by the pleadings. Thereafter, and before the court has commenced instructing the jury, and before the commencement of the argument, counsel may deliver to such judge . . ., and serve upon opposing counsel, additional pro-

posed instructions to the jury upon questions of law developed by the evidence and not disclosed by the pleadings." (Italics added.)

The court, in giving the instructions proposed by plaintiff on the subject of exemplary damages based on malice as an element of the case, is not to be presumed to have gone beyond the issues made by the parties. (Code Civ. Proc., § 1963 (15, 17, 18).) The record does not show at what stage of the proceedings the plaintiff's requested instructions were served and presented; under such circumstances, in accord with the principles hereinabove mentioned (Cal. Const., art. VI, § 4½; Code Civ. Proc., § 475), it is to be presumed in favor of the judgment that the proposed instructions were served and presented "before the first witness [was] sworn," and, hence, that the defendant knew, at least from that time onward, that the plaintiff was claiming exemplary damages.

The evidence hereinabove reviewed is consistent with the view that the case was tried on the theory that malice was at issue and that punitive damages were claimed. A party cannot permit an issue to be litigated and on appeal escape the consequences by claiming that such issue was not pleaded. (*Slaughter* v. *Goldberg, Bowen & Co.* (1915), 26 Cal.App. 318, 325 [147 P. 90]; *Boyle* v. *Coast Improvement Co.* (1915), 27 Cal.App. 714, 720-721 [151 P. 25]; *Hirsch* v. *James S. Remick Co.* (1918), 38 Cal.App. 764, 767 [177 P. 876]; *Pioneer Truck Co.* v. *Hawley* (1920), 47 Cal.App. 594, 595 [190 P. 1037]; *McCord* v. *Martin* (1920), 47 Cal.App. 717, 723 [191 P. 89]; *Avakian* v. *Noble* (1898), 121 Cal. 216, 219 [53 P. 559]; 8 Cal. Jur. 893.)

Defendant urges that the evidence which shows malice was admissible as relevant to some other issue in the case, and, hence, that his failure to object to such evidence cannot be held to indicate acquiescence in the trial of the issue of malice as a basis for the award of exemplary damages. He cites *Lorenz* v. *Hunt* (1928), 89 Cal.App. 6, 15 [264 P. 336], wherein the court says, "The complaint contains no allegation of oppression, fraud or malice on the part of defendant nor any demand for exemplary damages. There is no basis, therefore, for the award of punitive damages. (8 Cal. Jur. 894.) It is true that there is sufficient evidence to show malice and the court found that the defendant's assault upon the plaintiff and her arrest by him were malicious and oppressive, but it cannot be held that the case was tried upon the theory

that the question of punitive damages was in issue, because the evidence tending to show malice and oppression was admissible in support of the allegation of actual damages.'' We are satisfied that the very substance of the matter quoted distinguishes that case in principle from the one before us; as already shown, in the case at bar the record falls short of establishing that malice, with punitive damages based thereon, was not in issue at the trial. The fact that exemplary damages find no express mention in the prayer of the complaint does not preclude the allowance of such damages upon a contested trial. (*Waite* v. *San Fernando Pub. Co.* (1918), 178 Cal. 303, 307 [173 P. 591].) Insofar as the language or holding of the Lorenz case may be deemed to contain implications inconsistent with the views herein expressed it is disapproved.

As to defendant's complaint regarding the failure of the trial court to instruct the jury on the legal significance of the word ''malice,'' little comment need be made beyond the observation that defendant failed to request any such instruction. Malice is a word in common usage and since, as shown above, malice was an issue in the case, it was defendant's duty, if he wished to have the term defined to the jury, to prepare and present a proper definitive instruction. (24 Cal.Jur. 824, § 90.)

For the reasons above stated we conclude that no prejudicial error has been established; accordingly, the judgment is affirmed.

Gibson, C. J., Carter, J., and Traynor, J., concurred.

SPENCE, J.—I dissent.

If the judgment herein had not included an award for $4,500 as exemplary damages but had consisted only of an award of $5,500 as compensatory damages, I could agree that such judgment for compensatory damages only should be affirmed. The pleadings here, however, contained neither an express allegation of ''oppression, fraud, or malice'' (Civ. Code, § 3294) nor any prayer for exemplary damages, and I cannot agree that malice, as the basis for an award of exemplary damages, was ever made an issue by the pleadings or otherwise. On the contrary, the complaint was in the usual form of a complaint for compensatory damages only, and there was nothing in the pleadings or evidence to apprise defendant that any claim for exemplary damages was to be made. Under such circumstances, the award of exemplary damages should not be permitted to stand.

The great weight of authority adheres to the rule stated in 15 American Jurisprudence, at pages 766 and 767, as follows: "To entitle a person to exemplary damages he must set up distinctly in his complaint the elements that make up the basis of his claim for such damages and must make such averments as will advise the defendant that he will have to meet a demand of that kind at the trial." This is a salutary rule, for where a recovery is sought for an amount over and above the sum which will fully compensate plaintiff for the wrong inflicted, such additional recovery is in the nature of a penalty, which should not be allowed unless defendant has been clearly apprised of the nature and basis of plaintiff's demand.

In *Lorenz* v. *Hunt*, 89 Cal.App. 6 [264 P. 336], the court said at page 15: "The complaint contains no allegation of oppression, fraud or malice on the part of defendant nor any demand for exemplary damages. There is no basis, therefore, for the award of punitive damages. (8 Cal.Jur. 894.) It is true that there is sufficient evidence to show malice and the court found that the defendant's assault upon the plaintiff and her arrest by him were malicious and oppressive, but it cannot be held that the case was tried upon the theory that the question of punitive damages was in issue, because the evidence tending to show malice and oppression was admissible in support of the allegation of actual damages."

The situation presented in the cited case cannot be distinguished from that existing here. The mere fact that plaintiff may have proposed instructions on exemplary damages at some time during the trial cannot, in and of itself, be made the basis for the claim that the case was tried upon the theory that the question of exemplary damages was in issue. In my opinion, the case of *Lorenz* v. *Hunt, supra,* correctly sets forth the rules governing the circumstances under which exemplary damages may be awarded, and it should be followed rather than disapproved.

Shenk, J., and Edmonds, J., concurred.

Appellant's petition for a rehearing was denied April 29, 1948. Shenk, J., Edmonds, J., and Spence, J., voted for a rehearing.