Luis Fernandez BONILLA, Plaintiff,

v.

**CITY OF SAN DIEGO, et al.,**
**Defendants.**

**Civ. No. 89–0125–B(IEG).**

United States District Court,
S.D. California.

Jan. 4, 1991.

Donald L. Levine, Plourd & Levine, Marco E. Lopez, San Diego, Cal., for plaintiff.

Michael McGuinness, Kenneth K. So, City Attorney's Office, Litigation Div., Cal., for defendants City of San Diego, Stone, Bailey, and Cueva.

Donald F. Shanahan, Asst. U.S. Atty., San Diego, Cal., for defendants Montoya, Eliason and Cunningham.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

BREWSTER, District Judge.

## I. STATEMENT OF THE CASE

During hours of darkness on January 27, 1988, plaintiff attempted to enter the United States illegally. While in the United

States, but just north of the border, plaintiff and two companions had an altercation with six members of the Border Crime Prevention Unit (BCPU), in which the two companions were fatally shot and plaintiff was wounded.

Based on his version of events, plaintiff filed the instant suit, alleging the following six causes of action: (1) violation of civil rights under § 1983 against city officers; (2) violation of civil rights under § 1983 against City of San Diego; (3) battery against city officers and City of San Diego; (4) negligence against city officers and City of San Diego; (5) negligent hiring, training, retention, and supervision against City of San Diego; (6) violation of plaintiff's constitutional rights pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), against the federal agents.

The central issue before the court on this Motion for Summary Judgment is whether, under the undisputed facts of this case, the defendants are immune from suit for inflicting the injuries suffered by plaintiff. The court concludes that the officers are immune, and that summary judgment should be granted in their favor.

## II. REVIEW OF THE EVIDENCE

The BCPU was formed in 1984 to combat the violence perpetrated against Mexican citizens attempting to enter the United States illegally. Declaration of Dana Cunningham ("Cunningham Declaration"), p. 2, para. 4. The specific purpose of the BCPU, as opposed to the United States Border Patrol generally, is to combat violence committed against undocumented immigrants rather than to seek the arrest and deportation of such immigrants. Declaration of Stephen M. Stone ("Stone Declaration"), p. 1–2, para. 2; Declaration of Celso G. Cueva ("Cueva Declaration"), p. 3–4, para. 2; Dec-

laration of John B. Bailey ("Bailey Declaration"), p. 1–2, para. 2.

The BCPU is comprised of Border Patrol agents and San Diego City police officers, working in teams that patrol the border region in the United States. Cunningham Declaration, p. 1, para. 3. On the night in question, three city officers and three federal agents were patrolling the border area as members of the BCPU. *Id.* at p. 2, para. 6. The BCPU members were not dressed to appear as undocumented aliens, nor were they instructed to act as "decoys" to lure border bandits into criminal activity. *See* Declaration of Michael McGuiness, Exhibit C, pp. 223, 227.[1]

During the BCPU's patrol on the night in question, Plaintiff and his two companions were observed walking on a dirt trail that was parallel to the sign-cut road on which the BCPU was traveling. Cunningham Declaration, p. 3, para. 9; Declaration of Raymond Montoya ("Montoya Declaration"), p. 2, para. 5–6; Declaration of James Eliason ("Eliason Declaration"), p. 1, para. 3; Stone Declaration, p. 2, para. 3; Cueva Declaration, p. 4, para. 3; Bailey Declaration, p. 2, para. 4. A sign-cut road is a generally north-south unmarked trail which passes through the hills near the border area.

While moving in this parallel direction, plaintiff and his two companions quickened their pace in an apparent effort to reach the intersection of the dirt trail upon which they were traveling and the sign-cut road upon which the BCPU was traveling. Cunningham Declaration, p. 3, para. 12; Montoya Declaration, p. 2, para. 7–8; Eliason Declaration, pp. 1–2, para. 3–4. As the BCPU approached the intersection, plaintiff and his companions were standing in plain view in the center of the sign-cut road. Declaration of Donald Levine ("Levine Declaration"), Exhibit A, pp. 448–49 [2];

---

1. The court has considered the trial transcript of defendant Eliason, wherein he states that at the time he first noticed plaintiff and his two companions, he turned his face away because "I did not want them to see me as anything but an illegal alien headed north." Levine Declaration, Exhibit J, p. 369. Whatever Agent Eliason's initial reaction and state of mind might have

been, the fact remains that none of the BCPU officers were dressed as aliens, and it was not the policy of the BCPU to use such tactics.

2. Exhibit A to the Levine Declaration consists of portions of the trial transcript in plaintiff's criminal trial on a charge of attempted robbery of the BCPU. Said trial occurred in San Diego

Cunningham Declaration, p. 3, para. 13; Montoya Declaration, p. 2, para. 7.

Defendants claim that as the BCPU approached, one of plaintiff's companions turned and said, "No te muevas, cabron" ("Don't move, fucker"), indicating to the agents that plaintiff and his two companions intended to rob them, apparently believing the Unit was comprised of undocumented immigrants. Montoya Declaration, p. 2, para. 11; Eliason Declaration, p. 2, para. 5; Stone Declaration, p. 2, para. 4; Cueva Declaration, p. 4, para. 4; Bailey Declaration, p. 2, para. 5.

According to defendants, as the individual made the threat, he simultaneously reached into his waistband and pulled out an object which appeared to be a handgun. Montoya Declaration, p. 2, para. 14; Stone Declaration, p. 2, para. 4; Cueva Declaration, p. 4, para. 4; Bailey Declaration, p. 2, para. 5. At the same time, plaintiff and his other companion began to encircle the BCPU, and plaintiff also pulled out what appeared to be a handgun. Montoya Declaration, p. 2, para. 15. Allegedly fearing for their lives, the BCPU officers then drew their own weapons and fired at the three individuals. Id. at para. 16–17; Eliason Declaration, p. 2, para. 10–11; Stone Declaration, p. 2, para. 5; Cueva Declaration, p. 4, para. 4; Bailey Declaration, p. 2, para. 6.

When the shooting ceased, plaintiff's two companions lay dead, and plaintiff lay wounded. Declaration of David R. Ayers, p. 2, para. 4.[3] Pieces of a plastic toy gun were found lying "in a direct path between the site of the shooting and [plaintiff's] final resting location." Id. at para. 5. A toy plastic flintlock pistol was found located close to one of the decedents, Id. at para. 6, and a knife and leather scabbard was found on the person of the other decedent. Id. at para. 7. In all, three weapons, or replica weapons, were found in the immediate vicinity of plaintiff and the two decedents.

Plaintiff has presented various and sometimes contradictory versions of the events leading up to the shootings. During his criminal trial in San Diego Superior Court, plaintiff stated that as the BCPU approached he and his companions did not say anything, and "were just standing there." Levine Declaration, p. 433. However, plaintiff has given two statements which contradict this testimony. First, on cross-examination during his criminal trial, when plaintiff was asked whether he heard his companion say something to the approaching BCPU officers, he responded by stating: "No. Because he was moving toward the people [the BCPU officers]." Id. at p. 452.

Second, during plaintiff's deposition in this case, he was asked, "Do you recall if the guides said anything to the group as they approached?" Defendants' Reply to Plaintiff's Opposition ("Reply"), Exhibit H, p. 242. Plaintiff responded, "I don't recall." Id. When the same question was read back, plaintiff again responded, "I don't recall." Supplemental Submission of Exhibit I to Reply ("Supplement"), p. 243.

In addition, although plaintiff testified during his criminal trial that he and his companions were "just standing there" as the BCPU approached, he later conceded that he had no way of knowing whether his companions made any threatening movements toward the officers. When asked on cross-examination whether he saw one of his companions make "any movement of his hands before the shooting started," plaintiff responded, "No. I wasn't paying any attention to anybody." Levine Declaration, Exhibit A, p. 454. During his deposition, plaintiff again stated that he could not see what his companions were doing because he was focusing on the approaching BCPU officers. Reply, Exhibit H, p. 242.

County Superior Court on November 28, 1988, and the court is informed that plaintiff was acquitted.

**3.** Mr. Ayers has been a homicide detective with the San Diego Police Department for 23 years.

Ayers Declaration, p. 1, para. 1. Immediately after the shooting in this case, Mr. Ayers investigated the scene and collected evidence. Id. at para. 2.

With respect to the weapons found at the scene, plaintiff has claimed that he was not armed on the night of the incident, nor did he see any weapon or replica weapon in the possession of either of his two companions. Levine Declaration, p. 454. Although plaintiff never wavered from this testimony concerning himself, he did concede that it was "possible" that a gun could have been "sticking in someone's waistband" prior to the incident. *Id.* at p. 453. Moreover, as noted above, irrefutable evidence gathered at the scene after the incident conflicts with plaintiff's claims, and establishes that plaintiff and/or his companions were armed, at least with replica weapons which could be used to coerce potential victims. *See* Ayers Declaration.

## III. SUMMARY JUDGMENT STANDARD

In order to prevail on a motion for summary judgment, the moving party must establish that no material fact is in "genuine dispute" such that a "reasonable jury could not return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Fuller v. Frank*, 916 F.2d 558, 562 n. 6 (9th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249–250, 106 S.Ct. at 2511 [citations omitted].

## IV. FINDINGS OF FACT

1. The conduct of plaintiff and his companions in standing in the middle of the sign-cut road is inconsistent with the typically evasive behavior of undocumented immigrants who cross the border in this region. Moreover, such conduct is consistent with the activity of "border bandits" who will typically confront their victims as they travel nortward along sign-cut roads. *See* Cunningham Declaration, p. 3, para. 13; Montoya Declaration, p. 2, para. 8; Declaration of Arnold E. Forsyth ("Forsyth Declaration"), p. 3, para. 14. Insofar as these Declarations discuss the general behavior of undocumented immigrants as compared to border bandits, they have not been op-posed by any declarations or exhibits from plaintiff.

2. There is no genuine issue of material fact such that a reasonable jury might conclude that one of plaintiff's companions did not shout something at the BCPU officers as they approached. Viewing plaintiff's prior testimony as a whole, it is clear that plaintiff admits to being unsure whether any threats were made as the BCPU approached. *See* Levine Declaration, Exhibit A, p. 452; Reply, Exhibit H, p. 242; Supplement, p. 243. When confronted by clear contradictory evidence from the officers who were present, such uneven and inconsistent testimony is barely "colorable," and is not sufficient to create a genuine issue of material fact under the "reasonable jury" standard of *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510.

3. Likewise, there is no genuine issue of material fact such that a reasonable jury might conclude that neither plaintiff nor his companions reached for weapons or replica weapons after the threat was made. Again, plaintiff's testimony is internally inconsistent and reveals a lack of independent knowledge on this issue. *See* Levine Declaration, Exhibit A, p. 454; Reply, Exhibit H, p. 242. As such, plaintiff's testimony is not truly probative. Accordingly, this court finds that no genuine issue of material fact exists under the *Liberty Lobby* standard.

4. In light of the evidence discovered at the scene, and the declarations submitted by defendants, there is no genuine issue of material fact such that a reasonable jury might conclude that neither plaintiff nor his companions were carrying weapons when the BCPU approached. Plaintiff's testimony indicates that he admits to no independent knowledge of whether either of his companions were carrying weapons. *See* Levine Declaration, Exhibit A, p. 453; Ayers Declaration, pp. 2–3, para. 5–7. Therefore, plaintiff's testimony again is of limited probative value, and does not create a genuine issue of material fact as to whether somebody in his party was armed or appeared to be armed.

## V. CONCLUSIONS OF LAW

■ 1. Because the alleged constitutional deprivation in this case centers on the BCPU officers' use of excessive force, the first frame of reference for the court is the "reasonableness" test of the fourth amendment. *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989); *Reed v. Hoy*, 891 F.2d 1421, 1423 (9th Cir.1989). Based upon the four findings of fact listed above, the BCPU officers acted reasonably in responding with deadly force to the apparent threat posed by plaintiff and his two companions.

■ 2. However, even assuming *arguendo* that the officers' behavior constituted excessive force under the fourth amendment, the court concludes that the conduct would still be shielded by qualified immunity.[4] Conduct which is unreasonable under the fourth amendment may still be reasonable under the qualified immunity test. *See Anderson v. Creighton*, 483 U.S. 635, 643, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1986).

As the Supreme Court has stated, "[G]overnment officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see also Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986) (qualified immunity shields "all but the plainly incompetent or those who knowingly violate the law").

Applying the "objective reasonableness" test of *Harlow*, it is clear that the conduct of the BCPU officers in this case was objectively reasonable under pre-existing law. The evidence described above indicates that the officers were confronted by a situation in which a reasonable person could perceive that a dangerous threat existed. Accordingly, "in the light of the pre-existing law the unlawfulness [of the officers' response]" was not "apparent." *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039.

3. Based upon these conclusions of law, summary judgment should be granted to all defendants named in the first (§ 1983) and sixth causes of action (*Bivens*), since the defendants' conduct did not constitute excessive force, and was also shielded by qualified immunity.

■ 4. The City of San Diego is also entitled to summary judgment as to the second cause of action, which alleges municipal liability under § 1983, because plaintiff has presented no competent evidence demonstrating that the BCPU officers deprived him of his constitutional rights pursuant to the city's policy or custom. *Monell v. Dept. of Social Service of the City of New York*, 436 U.S. 658, 692, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). Plaintiff may not rest his claim on general, unsupported or frivolous allegations of unconstitutional practice or pattern. *Oklahoma City v. Tuttle*, 471 U.S. 808, 823, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985).

■ Based on the undisputed evidence presented in this case, the City's hiring and training procedures with respect to the BCPU do not recommend, endorse, or encourage the unwarranted use of deadly force. *See* Declaration of Raul D. Bejarano, pp. 3–4, para. 7–8.[5]

---

4. Qualified immunity applies with equal force to both the § 1983 claim and the *Bivens* claim. *Graham v. Conner*, 490 U.S. 386, 109 S.Ct. 1865, 1870 n. 9, 104 L.Ed.2d 443 (1989).

5. The only evidence presented by Plaintiff on this issue is an article from the San Diego Tribune describing a public meeting of the San Diego Citizens' Review Board on Police Practices. Exhibit A to Plaintiff's Opposition to City's Motion for Summary Judgment. The article describes the testimony of J. Wesley, a former enrollee at the San Diego Police Academy, who claimed that his instructors emphasized the use of excessive force in a positive manner. This evidence is inadmissible on a motion for summary judgment for the following reasons: (1) it is not supported by declaration; (2) it is hearsay as it is offered for the truth of the matter asserted, i.e., that such a policy existed; (3) as to its key passages, the statements of Wesley, it is hearsay within hearsay; and (4) it is of general interest, not specifically relevant to the incident which occurred here.

5. For identical reasons, the City is also entitled to summary judgment on the fifth cause of action, alleging negligence in the hiring, training, and supervision of its officers. Again, plaintiff has presented no competent evidence rebutting the Bejarano Declaration.

 6. Based on the undisputed facts of this case, plaintiff's third cause of action, alleging battery, must fail. A battery is any intentional, unlawful, and harmful contact by one person with the person of another. 5 Witkin, *Summary of California Law,* (9th ed. 1988) § 347, p. 437. However, self-defense is appropriate in order to protect oneself from wrongful injury. Cal. Civil Code § 50. The force that one may use in self-defense is that which "reasonably appears necessary, in view of all of the circumstances of the case." *Vaughn v. Jonas,* 31 Cal.2d 586, 600, 191 P.2d 432 (1948). The court concludes from all of the declarations filed herein that defendants' use of force in this case was reasonably necessary as a matter of law under all of the circumstances, and that the plaintiff has failed to establish a colorable issue of fact on these issues.

7. For similar reasons, the court concludes that all defendants are entitled to summary judgment on the fourth cause of action, which alleges negligence. In responding to the threat posed by plaintiff and his companions on the night in question, defendants used reasonable care for all of the reasons stated above.

8. The Motion to Dismiss brought by defendant Dana Cunningham is unopposed and is granted. Defendant Cunningham never fired her weapon. The liability of federal officials for governmental acts can be predicated only on the personal involvement of the defendant in the alleged wrong. *Sportique Fashions, Inc. v. Sullivan,* 597 F.2d 664, 666 (9th Cir.1979).

9. The court has taken into consideration all declarations and evidence filed by the parties, with the exception of the newspaper article discussed in note 5, *supra.* Without ruling on the merits of defendants' Motion to Strike certain items of evidence, the court denies the motion as moot. The court concludes that even if the disputed matters are considered in plaintiff's favor, they do not alter the court's findings of fact and conclusions of law.

Based upon all of the above, defendants' motion for summary judgment is granted.

IT IS SO ORDERED.

