993 F.2d 881
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Luis Fernandez BONILLA, Plaintiff-Appellant,
v.
CITY OF SAN DIEGO; Stephen Stone; John Bailey; Celso
Cueva; Raymon Montoya; James Eliason; Dana
Cunningham; and Does I through XX,
inclusive, Defendants-Appellees.
 No. 91-55402.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 7, 1993.
Decided April 29, 1993.
 
 Before BOOCHEVER, NORRIS and NOONAN, Circuit Judges.
 
 
 1
 AMENDED MEMORANDUM*
 
 
 2
 The Memorandum disposition, filed June 10, 1992, is hereby withdrawn.
 
 
 3
 Luis Fernandez Bonilla appeals the district court's grant of the defendants' summary judgment motions in his excessive force suit against the City of San Diego and individual city and federal border patrol agents. We reverse.
 
 
 4
 * On the night of January 27, 1988, Bonilla, a Mexican citizen, and two companions, whom he had engaged as guides or "coyotes," crossed the United States-Mexico border. They began travelling on foot in an uninhabited area north of the border. At the same time, six members of the Border Crimes Prevention Unit (BCPU)[1] were on patrol in the area. It is uncontested that the members of the BCPU had been briefed earlier in the evening that a border bandit group of three to four persons armed with semi-automatic weapons and knives recently had been active there.
 
 
 5
 The BCPU patrol noticed Bonilla's group. The latter were travelling on a footpath that ran somewhat parallel to and eventually intersected the road on which the patrol was travelling. At this point, both groups were roughly twenty-five yards away from the fork in the road. Bonilla's group reached the intersection first and waited, standing, in the intersection.
 
 
 6
 Because Bonilla's group failed to show the kind of fear characteristic of undocumented immigrants, the BCPU officers claim to have strongly suspected that the three individuals were armed border bandits. Nevertheless, the patrol walked up to within three feet of these individuals without identifying itself as a law enforcement unit. As the BCPU patrol approached the group, one of Bonilla's companions, Carlos Hernandez-Ruiz (Ruiz), turned and approached the patrol. According to the defendants, Ruiz reached into his waistband as if going for a weapon and shouted threateningly in Spanish, "Don't move, fucker!". Some of the defendants contend that, at the same time, Bonilla and his other companion, Mario Perez-Jasso (Jasso), began pulling out of their waistbands what appeared to be weapons as they moved forward toward the patrol to surround them.
 
 
 7
 For his part, Bonilla claims that he did not hear Ruiz say anything to the approaching defendants and could not see whether Ruiz reached to pull anything from his waistband. In addition, Bonilla contends that he was not carrying any weapons and did not himself move toward the defendants. Bonilla's description of his own behavior has been corroborated by the statement of one BPCU officer who acknowledged that he did not at any time see Bonilla make a motion towards his waist or see him with an item in his hand.
 
 
 8
 Without any warning and without identifying themselves as law enforcement officers, the six members of the BCPU patrol then opened fire on Bonilla's group. One officer fired 16 shots. All in all, forty-five spent shells were found in the area. It is undisputed that the immigrants did not fire a single shot. When it was all over, Ruiz and Jasso were dead. Bonilla suffered at least eight gunshot wounds in his legs and buttocks, some inflicted when he had his back to the BCPU agents.
 
 
 9
 Bonilla was eventually charged with attempted robbery, but was acquitted after a jury trial. On January 25, 1989, Bonilla filed this suit for damages against the City of San Diego and the six federal and city officers of the BCPU, alleging claims under 42 U.S.C. § 1983 and state tort law. After discovery, the defendants moved for summary judgment. On January 4, 1991, the district court granted the defendants' motions. Bonilla v. City of San Diego, 755 F.Supp. 293 (S.D.Cal.1991). Bonilla now appeals the entry of judgment in favor of the individual BCPU defendants on four causes of action involving constitutional claims of excessive force and unlawful seizure, and state claims of battery and negligence.[2]
 
 II
 
 10
 We review a summary judgment de novo to determine whether the district court was correct in ruling that there are no genuine issues of material fact. Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, 110 S.Ct. 3217 (1990). In doing so, we view the evidence in the light most favorable to Bonilla as the non-moving party. See Anderson v. Liberty Lobby Inc., 477 U.S. 242, 255-56 (1986). It is neither our function nor the district court's to make credibility determinations. Id. at 255.
 
 
 11
 The defendants claim qualified immunity. To overcome the qualified immunity defense, plaintiff must establish first that the defendants' actions violated a clearly established right of which a reasonable officer would have been aware, and second, that a reasonable officer would have known that his actions violated that clearly established right. See, e.g., ActUp!/Portland v. Bagley, No. 90-35888 (9th Cir. Feb. 10, 1993); Brady v. Gebbie, 859 F.2d 1543, 1555-56 (9th Cir.1988).
 
 
 12
 In this case, the first prong is not at issue, for it is settled law that officers may not use excessive force in apprehending a suspect. This case hinges on the second prong--whether a reasonable officer could have believed it was lawful to shoot Bonilla and his group. Accordingly, the officers are entitled to summary judgment if, after all reasonable inferences are drawn in favor of the plaintiff, the evidence supports the conclusion that the use of force was objectively reasonable.
 
 
 13
 The defendants, as the moving parties, tendered their version of the events of that night, painting a picture of apparent threat to their safety in which their actions in self-defense appear justified. The burden then shifted to Bonilla to produce evidence, by affidavit, deposition, or otherwise, to establish a genuine issue of material fact. Anderson, 477 at 256-57. In other words, Bonilla had to present evidence that either contradicts the defendants' version of events or adds to it, such that with these new or substituted facts, the totality of circumstances could support the conclusion that objectively unreasonable force was used.
 
 
 14
 We believe that Bonilla satisfied his burden. Bonilla provided the district court with a radically different version of the events that transpired the night of January 26. Bonilla claimed not to have heard Ruiz threaten the BCPU officers. If there was no such threat, a reasonable officer could not have thought that force was appropriate before at least giving a warning. A reasonable jury might think that, had Ruiz threatened the BCPU officers, Bonilla would have overheard the threat. It might then infer that no threat was uttered since Bonilla heard nothing. Such an inference could thus support a conclusion that the patrol's use of the initial force was unjustified.
 
 
 15
 In any case, based on Bonilla's description of his own behavior, which is in part corroborated by the description proffered by one BCPU officer, the jury might find that Bonilla, at all relevant times, looked like a non-threatening bystander. This finding would in turn support the conclusion that the use of force against Bonilla was unjustified or that the amount of force used against Bonilla was excessive. Whether the patrol was justified in firing as many shots as it did or in shooting Bonilla from behind may turn on the relative credibility of Bonilla and the defendants.
 
 
 16
 Because summary judgment is normally inappropriate when a case turns on credibility determinations, we reverse the summary judgment to the defendants and remand for further proceedings.
 
 IV
 
 17
 Our evaluation of Bonilla's state law claims is informed by the results of our constitutional inquiry. Bonilla's battery claim survives summary judgment because under California law a person may use force in self defense only as a protection against wrongful injury. Cal.Civ.Code § 50. As we concluded with the Fourth Amendment claim, there are genuine issues of material fact whether the defendants' use of deadly force "reasonably appear[ed] necessary, in view of all the circumstances of the case", thus entitling them to judgment on this claim. See Vaughn v. Jonas, 31 Cal.2d 586, 600, 191 P.2d 432 (1946). Bonilla's negligence claim must also survive summary judgment. The defendants were under a duty to use reasonable care under the circumstances, in proportion to the danger to be avoided and the consequences that might reasonably be anticipated. Hilyor v. Union Ice Co., 45 Cal.2d 30, 36, 286 P.2d 21 (1955). As we concluded that there are genuine issues of material fact whether defendants' perception of a threat of serious bodily harm was reasonable, so do we conclude that there are genuine issues of material fact whether use of deadly force to avoid that harm constituted reasonable care. Summary judgment in defendants' favor on Bonilla's state tort claims was therefore improper.
 
 
 18
 REVERSED AND REMANDED.
 
 BOOCHEVER, Circuit Judge, dissenting in part:
 
 19
 I respectfully dissent from the majority's holding reversing the award of summary judgment insofar as the majority finds a triable issue of fact necessary to determine whether a reasonable officer would have believed it was lawful to fire at Bonilla's group. I agree, however, that a triable issue is presented in order for the court to determine whether a reasonable officer would have believed the amount of force used was lawful.
 
 
 20
 This case presents a close question whether there are genuine issues of fact to be tried, but I am persuaded by the detailed Order Granting Defendants' Motion for Summary Judgment and its references to the record in support of its findings of undisputed facts that a reasonable officer would have believed it was lawful to fire. I found troubling whether there was a triable issue that, at the time of the encounter, one of Bonilla's companions turned and said, "No te meuvas, cabron" ("Don't move fucker"), reasonably indicating to the agents that the plaintiff and his companions intended to rob them under the belief that the agents were undocumented aliens. The testimony also indicated that at the same time the individual making the threat reached into his waistband and pulled out an object which appeared to be a handgun.
 
 
 21
 Although Bonilla was within a few feet of his companions, he has given contradictory statements as to these key events. At his trial in San Diego Superior Court, he stated nothing was said and they "were just standing there." On cross-examination at his criminal trial, however, he responded to a question whether he heard his companion say something by stating, "No. Because he was moving toward the people." At his deposition he stated he did not recall whether anything was said. Considering his position in such close proximity to the alleged spokesman, and the positive testimony as to the threat, I do not believe Bonilla has met his burden of raising a genuine issue of fact. Taking the threat into consideration with the pulling of the object from the waistband and the three men's conduct being the direct opposite of that to be expected from illegal aliens seeking to enter the country undetected, I agree with the district court's order awarding summary judgment insofar as it concludes a reasonable officer would have believed it was lawful to fire.
 
 
 22
 With reference to the amount of force, and particularly in view of the doctor's testimony that the trajectory of one of the bullets was from above the victim, I believe that a triable issue is presented. If a jury were to agree with the doctor, and also believe Bonilla that he was shot approximately eight times after he was down, I would conclude that a reasonable officer would not believe such force was required and accordingly there would not be qualified immunity on the issue of excessive force.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The purpose of the BCPU, which is made up of San Diego police officers and members of the United States Border Patrol, is to combat violence against undocumented immigrants committed by "border bandits."
 
 
 [2]
 The constitutional claims against the city for unlawful policy and custom, and negligent training and supervision are not before us in this appeal