Filed 6/4/14  DeVries v. Naegele CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| DONALD DeVRIES, | H038385 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. 1-09-CV-149170) |
| v. | |
| CHARLES JOSEPH NAEGELE, | |
| Defendant and Appellant. | |

There are two "so-called 'interference torts' . . . interference with contract and its sibling, interference with prospective economic relations . . . ."  (*Della Penna v. Toyota Motor Sales, U.S.A., Inc.* (1995) 11 Cal.4th 376, 381, fn. omitted (*Della Penna*.)[1]  This appeal involves the latter.  It has its genesis in a marital dissolution case.

### *Background*[2]

Donald DeVries, an attorney, (hereafter DeVries) represented LaVonne Saeb (hereafter Ms. Saeb) in *In re Marriage of Saeb*, case number 1-96-FL063523, in Santa

---

[1]     The tort is variously known as interference with "prospective economic advantage," "prospective contractual relations," and "prospective economic relations." (*Della Penna, supra,* 11 Cal.4th at p. 378.)

[2]     In general, these underlying facts are not in dispute.

Clara County Superior Court.[3]  On July 15, 1998, Judge James W. Stewart issued an "Order and Judgment Regarding Custody, Visitation, Support, Division of Property, Payment of Fees, Issuance of Writ of Execution and Related Orders."[4]  (Hereafter the dissolution order.)

The dissolution order and writ of execution were issued in favor of Ms. Saeb and DeVries in the amount of $911,727 of which $177,338 was specifically designated as attorney fees to go to DeVries.  The dissolution order was made following a default proceeding since Mr. Saeb failed to appear.[5]

In 2008, Mr. Saeb contacted and paid Charles Naegele (hereafter Naegele) to serve as his attorney for the purpose of attempting to negotiate a settlement with Ms. Saeb and to get the bench warrant against him recalled.[6]  Ultimately, Naegele was successful in negotiating a settlement with Ms. Saeb.  Naegele's name, title and address as attorney for Mr. Saeb appear on the stipulated agreement.  "Atty for Resp. F. Saeb" was handwritten on the proposed stipulation.  The stipulation expressly stated that the writ of execution in

---

[3]     The parties to the marital dissolution case were Ms. Saeb and her then husband Farhang Saeb (hereafter Mr. Saeb).

[4]     A writ of execution is a legal process issued by a court that entitles the judgment creditor to seize the property of the judgment debtor and to satisfy the judgment from the property seized.  Writs are generally enforceable for 10 years from entry of judgment (Code Civ. Proc., § 683.020)  However, Family Code section 291 provides that *any* family law money judgment, including a support judgment, is enforceable until fully satisfied and is not subject to any renewal requirement; the statute specifically includes orders as well.  (Fam. Code, § 291, subds. (a), (g), added by Stats. 2006, ch. 86, § 4, amended by Stats.2007, ch. 130, § 87.)  The Legislature expressly provided that provisions of the Family Code apply retroactively.  (See *In re Marriage of Fellows* (2006) 39 Cal.4th 179, 186.)

[5]     Judge Stewart found that Mr. Saeb had intentionally absented himself from the proceeding after lawful orders were made for him to turn over to the court his two passports, stock certificates and the pink slip to his Mercedes.  Further, Mr. Saeb failed to appear to show cause why a contempt hearing should not be held for his willful diversion of funds, after which the court issued a bench warrant and set bail at $500.000.

[6]     The record of the proceedings in an earlier appeal in this case (H037714) that was dismissed has been added to the record on appeal in this case.

2

the sum of $911,727 "has been satisfied, except for a final dollar amount and two stock certificates to be released from escrow, the final payment of $69,000 and two stock certificates to petitioner from respondent . . . ; upon the approval of this Stipulation and Order, we stipulate that such writ of execution shall be deemed satisfied." The stipulation set forth a joint request for the recall of the bench warrant against Mr. Saeb. On August 1, 2008, Judge Mary Arand signed an order, based on the Saebs' stipulation, decreeing that upon the final payment of $69,000 and the two stock certificates being released to Ms. Saeb, the writ of execution "shall be deemed satisfied." The court ordered the bench warrant "withdraw[n]"

*The Underlying Action*

On August 6, 2009, DeVries filed a complaint in Santa Clara County Superior Court for "General, Special and Punitive Damages for Civil Conspiracy, for Intentional Interference with Prospective Economic Relationship, and for Negligent Interference with Prospective Economic Relationship" against Naegele, Ms. Saeb and Mr. Saeb.

DeVries alleged that the defendants had "knowingly, willfully, and surreptitiously conspired and secretly agreed amongst themselves and against [his] interests by intentionally and fraudulently misrepresenting to the Santa Clara County Superior Court in a signed ex parte stipulation that the 1998 dissolution judgment and writ of execution had been " 'satisfied.' " DeVries asserted that this statement in the stipulation was a "blatant and fraudulent misrepresentation and patently untrue" because the writ of execution unequivocally provided that the $911,727 included an amount of $177,338 payable to him as a joint creditor and he "never received any payment of any kind from" Mr. Saeb and therefore the writ of execution could not be " ' deemed satisfied.' "

After a three day court trial, at which Ms. Saeb, DeVries and Naegele testified and were self-represented, in a tentative decision issued on November 12, 2010, Judge Overton found in favor of DeVries and against all three defendants as to his three causes

3

of action; the court awarded him compensatory damages in the amount of $141,290.20.[7] The court deemed the tentative decision to be the court's proposed statement of decision. (Cal. Rules of Court, rule 3.1590(c)(1).)

The court found that the "direct and circumstantial evidence presented at trial (and reasonable inferences drawn from the evidence) is compelling that each of the three defendants herein knew about [DeVries]'s economic relations that were so explicitly spelled out in the Dissolution Order/Judgment. Ms. Saeb was aware of it because she was a party to those proceedings and she was aware of the ongoing developments in her case. She was privy to the relevant court documents and she was also in receipt of a series of email transmissions from [DeVries] advising that he had no intention of relinquishing his rights to collect the sums that Mr. Saeb owed him. (*See* Exhibits 7-13 herein.) As a party to the marital dissolution case, Mr. Saeb was also aware of [DeVries]'s economic arrangements with his estranged spouse. Likewise, given Defendant Naegele's role in negotiating and crafting the Stipulation and Final Dissolution Order—it is highly improbable that he was 'in the dark' about [DeVries]'s economic relations. [¶] The evidence at trial established that [DeVries]'s name was conspicuously displayed as a 'judgment creditor' in the marital dissolution case. As [DeVries] points out, it strains credibility to believe that Defendant Naegele had all of the requisite documents and information necessary to draft the Stipulation and Final Dissolution Order while at the same time remaining ignorant of [DeVries]'s status as a judgment creditor. He was certainly aware that Ms. Saeb had been represented by other counsel in the marital dissolution case and that fact alone would have given rise to some basic follow-up inquires during the course of his discussions with the Saebs as part of the negotiation process. [¶] Notwithstanding all of the aforementioned circumstances, one would like to

---

[7] DeVries's law partner Amy Horowitz represented DeVries in a limited role during parts of the trial.

give Defendant Naegele every benefit of the doubt on the question of what he did or did not know in negotiating and preparing the Stipulation and Final Dissolution Order. However, in addition to the confluence of circumstantial evidence pointing to his knowledge—his trial testimony lacked credibility. Stated plainly, Defendant Naegele was reticent in his responses to questions throughout his testimony. For example, he repeatedly disavowed any knowledge or recollection of key information concerning the marital dissolution case on the premise that his role was more akin to that of a 'scribe' than an attorney and he was 'not paid' to do more. Those were recurrent themes in his testimony. [¶] It became increasingly apparent as Defendant Naegele's testimony progressed that he was straining to convey an aura of disengagement with respect to his role in the marital dissolution case. The fact that he omitted to represent on the typewritten heading of the Stipulation that he was acting as counsel for Mr. Saeb—instead scrawling that information in handwritten form on the face page of the pleading after its preparation for submission to the court—only added to concerns about his credibility and raised new questions about his motives. [¶] Additionally, while an attorney with Defendant Naegele's credentials and experience would be well aware of his ethical obligations as an 'officer of the court' (i.e. beyond just what he might be paid to do) to ensure that he did not mislead the judge—he failed to acknowledge during cross-examination that he owed a duty to provide notice to [DeVries] prior to seeking the court's approval of the Stipulation or take even minimal affirmative steps to ensure that he was not providing the court with misleading information."

The court scheduled a hearing on the parties' objections to the tentative decision for December 20, 2010. At the hearing, Judge Overton made a disclosure regarding the affiant of one of the declarations that Naegele submitted with his objections to the tentative decision. On December, 27, 2010, Naegele filed a verified challenge for cause.

5

(Code Civ. Proc., § 170.1)  Temporarily, the case was stayed pending rulings on the challenge.[8]

Ultimately, on October 11, 2011, the court issued its statement of decision.[9]  On October 31, 2011, at a hearing on Naegele's request for a new trial, the court determined that the court could not hear Naegele's motion until the punitive damages portion of the case had been heard.  Accordingly, the court set a briefing schedule for the punitive damages portion of the trial and set a hearing date of December 12, 2011, to hear Naegele's motion.  At that time the court heard oral argument and took the matter under submission without taking any further evidence.

On March 9, 2012, the court issued a tentative decision regarding the bifurcated punitive damages phase of the trial, which the court deemed to be the court's proposed statement of decision.  Contemporaneously, the court issued a proposed amended judgment.  The parties did not submit timely objections.  On April 6, 2012, the court filed an amended judgment finding in favor of DeVries and against Naegele and Mr. Saeb on DeVries's three causes of action, but found in favor of Naegele and Mr. Saeb on DeVries's claim for punitive damages.  The court awarded DeVries $141,290.20 in compensatory damages jointly and severally against Naegele and Mr. Saeb.  DeVries was

---

[8]     In light of the procedure associated with the challenge, the court extended the period for the entry of judgment until 10 days after the hearing on objections to the court's tentative decision.  In due course, this court denied Naegele's two petitions for a writ of mandate to disqualify Judge Overton.  We have taken judicial notice of the proceedings in this court in H036485 and H036969 *Naegele v. Superior Court* (*DeVries*).

[9]     In this statement of decision, the court found that Ms. Saeb could not be liable on any of DeVries's causes of action; the court reasoned that because the tort of intentional interference with prospective economic relations required a relationship between DeVries and a third party and since Ms. Saeb was a party to the relationship from which DeVries's economic advantage arose, Ms. Saeb could not bear any liability.

6

deemed the prevailing party for purposes of the submission of costs as to Naegele and Mr. Saeb.[10]  On June 4, 2012, Naegele filed his notice of appeal.

In his opening brief, Naegele makes a series of arguments as to why DeVries suffered no damages; why the court should not have awarded damages based on DeVries's violation of the rules of professional conduct; why he cannot be liable for conspiring with Mr. Saeb; and why his representation of Mr. Saeb does not make him liable for interfering with DeVries's relationship with Ms. Saeb.  DeVries points out that Naegele has not identified the appropriate standard of review anywhere in his opening brief.  Accordingly, in his reply brief, Naegele frames the issue as follows; "The trial court ruled contrary to the Laws of the State of California" because "[a] party to an economic relationship cannot, as a matter of law, commit or conspire to commit a tortious interference therewith."  He asks this court to review the matter de novo.[11]

*Discussion*

Usually, the elements of the tort of interference with economic relations are stated as follows:  (1) an economic relationship between the plaintiff and some third party, with

---

[10]    The court entered judgment in favor of Ms. Saeb on DeVries's three causes of action.

[11]    Generally, the raising of a new ground for the first time is not proper appellate practice.  (*Taylor v. Roseville Toyota, Inc.* (2006) 138 Cal.App.4th 994, 1001, fn. 2.)  Accordingly, it is the general rule that matters presented for the first time in the reply brief need not be addressed (*Prince v. United Nat. Ins. Co.*, (2006) 142 Cal.App.4th 233, 238), and ordinarily we will not consider the matter.  (*Feitelberg v. Credit Suisse First Boston, LLC* (2006) 134 Cal.App.4th 997, 1022.)  The reason for this rule is that consideration of points raised for the first time in a reply brief deprives the respondent of an opportunity to counter the argument (*American Drug Stores, Inc. v. Stroh* (1992) 10 Cal.App.4th 1446, 1453) or to assist the court by furnishing it with the benefit of research and, in the case of questioned findings of fact, references to the record where evidence might be found in support of those findings.  (*Richard v. Richard* (1954) 123 Cal.App.2d 900, 903.)  That being said, in Argument IV in his opening brief, Naegele did assert in a very brief way that he could not be held liable for conspiring with one who cannot commit the tort of interfering with his own contract.  Accordingly, we will exercise our discretion and address this issue as framed in Naegele's reply brief.

7

the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant. (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1153 (*Korea Supply Co.*); *Edwards v. Arthur Andersen LLP* (2008) 44 Cal.4th 937, 944.) With respect to the third element of the tort of interference with economic relations, "a plaintiff must plead and prove that the defendant's acts are wrongful apart from the interference itself. [Citation.]" (*Korea Supply Co., supra,* 29 Cal.4th at p. 1154, citing *Della Penna, supra,* 11 Cal.4th at p. 393.)[12]

The tort of intentional interference with prospective economic relations imposes liability for wrongful conduct that disrupts the business relationship of another. (*PMC, Inc. v. Saban Entertainment, Inc.*(1996) 45 Cal.App.4th 579, 595, overruled on another point in *Korea Supply Co, supra,* 29 Cal.4th at p 1159, fn. 11.) It is an extension of the "basic principle underlying the tort of inducing breach of contract . . . ." (5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 741, p. 1069.) Although the underlying principles are related, there are both analytic and practical differences, depending on whether the economic interest at stake is embodied in a formal contract.

As the California Supreme Court has emphasized, there is a "distinction between claims for tortious disruption of an *existing* contract and claims that a *prospective* contractual or economic relationship has been interfered with by the defendant." (*Della Penna, supra,* 11 Cal.4th at p. 392; accord, *Korea Supply Co. supra,* 29 Cal.4th at p. 1157.) "The tort of interference with contractual relations protects an *existing, formally cemented* economic relationship. The tort of interference with prospective business

---

[12] DeVries alleged that Naegele and Mr. Saeb had fraudulently misrepresented to the Santa Clara County Superior Court that the $911,727 debt that Mr. Saeb owed to Ms. Saeb and DeVries had been satisfied.

relations protects nonformalized or anticipated business relationships which are reasonably certain to occur, but which are nonetheless *prospective.*" (*PMC, Inc. v. Saban Entertainment, Inc., supra,* 45 Cal.App.4th at p. 601.) The "interests invaded" are not of "equal dignity." (*Della Penna, supra,* 11 Cal.4th at p. 392.) A "formally cemented economic relationship is deemed worthy of protection from interference by a stranger to the agreement. Economic relationships short of contractual, however, should stand on a different legal footing as far as the potential for tort liability is reckoned." (*Ibid.*)

In *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, the California Supreme Court held that a tort action for interference with contract does not lie against a contracting party. (*Id.* at p. 521.) In *Kasparian v. County of Los Angeles* (1995) 38 Cal.App.4th 242, (*Kasparian*) the plaintiff, a limited partner of a partnership, sued the general partnership, two of the individual partners, and a Los Angeles County supervisor for interfering in settlement negotiations in which the plaintiff hoped the general partnership would buy out his interest. The plaintiff obtained a judgment against the partnership and two individual partners for conspiracy to intentionally interfere with his prospective economic advantage. (*Id.* at pp. 248, 249, 251.) The *Kasparian* court followed *Applied Equipment* and extended its holding to the tort of interference with prospective economic relations. The court concluded that the partnership could not be held liable, as a matter of law, for such a tort because "[i]t can only be asserted against a stranger to the relationship." (*Kasparian,* at p. 262, italics omitted.)

We need not decide if the *Kasparian* court was correct to extend the holding of *Applied Equipment* to the tort of interference with prospective economic relations. As we see it, notwithstanding the fact that DeVries was a joint judgment creditor, the relationship that Naegele and Mr. Saeb disrupted was between Ms. Saeb and DeVries; under the terms of the dissolution order Mr. Saeb was required to pay DeVries's attorney fees "payable as additional spousal support by respondent [Mr. Saeb] to petitioner [Ms. Saeb]." Out of the money paid to Ms. Saeb, DeVries would take a portion. Thus, the

9

relationship between Ms. Saeb and DeVries was the defined economic relationship that would probably have resulted in an economic benefit to DeVries.[13]  Contrary to Naegele's argument, the trial court correctly determined the economic relationship that was disrupted.  Neither Mr. Saeb nor Naegele were parties to that relationship.

Naegele's argument that there was no evidence that the economic relationship between DeVries and Ms. Saeb was interfered with or disrupted ignores DeVries's evidence that the balance due for his attorney fees was $141,290.20.  Rosalie Howard, DeVries's accountant, testified to the amount of money that Mr. Saeb had paid to Ms. Saeb that had been applied to DeVries's attorney fees.  In fact, Naegele offered to stipulate that the document prepared by Ms. Howard correctly showed the amount of money paid and how it was disbursed and the amount left owing to DeVries.  To now argue on appeal that there was no evidence that the economic relationship between DeVries and Ms. Saeb was disrupted is astonishing.

Naegele's argument that DeVries was not damaged because DeVries's expert witness testified that the 1998 dissolution order was still in force, misconstrues the expert's testimony.  As we read the testimony, the expert was referring to the fact that Judge Arand's August 1, 2008 order did not extinguish DeVries's *right* to collect his attorney fees; Judge Arand's August 1, 2008 order extinguised the 1998 dissolution judgment.  Similarly, the renewed judgment that DeVries sought in March 2008 was extinguished because the renewed judgment was based on the original 1998 judgment and writ of execution that Judge Arand deemed satisfied.  A judgment only remains viable until it has expired[14] or is deemed satisfied (and hence extinguished).  (See

---

[13]    Using the term "contract" very loosely, certainly, DeVries no longer had any "contract" remedy against Naegele and Mr. Saeb.  Judge Arand's August 1, 2008 order effectively extinguished any "contract" that Mr. Saeb had to pay spousal support to his ex-wife; further, Naegele was never a party to that "contract."

[14]    We reiterate, a money judgment or judgment for possession or sale of property under the Family Code, including a judgment or order for child, family, or spousal

10

8 Witkin, Cal. Procedure (5th ed. 2008) Enforcement of Judgment, § 34, p. 74, § 507, p. 546.) Payment in full by the judgment debtor will satisfy and extinguish the judgment (*Blake v. Arp* (1920) 48 Cal.App. 715, 717), as will a compromise or accord and satisfaction, e.g., by part payment. (*Armstrong v. Sacramento Valley Realty Co.* (1919) 179 Cal. 648, 651.) The sole function of the writ of execution was to secure the payment of the judgment; the result of quashing the writ of execution was that all rights and proceedings based thereon fell with it. (*Moreno v. Mihelis* (1962) 207 Cal.App.2d 449, 451.)

Finally, as to Naegele's assertion that DeVries violated the Rules of Professional Conduct, we assume that Naegele is arguing that DeVries came before the court with unclean hands, which Naegele pleaded as his seventh affirmative defense in his answer to DeVries's complaint. However, the defense was never litigated during the trial. For reasons best known to him, Naegele did not urge this matter before the superior court other than in his objections to the court's tentative decision wherein he asserted that DeVries obtained a judgment in the marital dissolution action in gross violation of Rule 3-300 of the California Rules of Professional Conduct.[15] Having failed to present the issue to the superior court during the trial, Naegele is in no position to raise the issue as error in this appeal. It is a well settled rule that a party is prohibited from asserting on appeal claims to relief not asserted or requested in the court below, and is prohibited from asserting matters of a defense not therein presented. (*Algeri v. Tonini* (1958) 159 Cal.App.2d 828, 831-832 [issue cannot be raised for the first time on appeal, when the issue was never asserted at the trial].) The rationale for this rule is simple: " 'The law

_____

support, is enforceable until paid in full or otherwise satisfied. The judgment or order is exempt from any requirement of renewal. (Fam. Code, § 291, subds. (a), (b), & (g).)

[15] Significantly, Naegele did not assert that Judge Overton had failed to rule on his affirmative defense of unclean hands. It was Naegele's burden to produce evidence to support his affirmative defense (*Wilson v. Ritto* (2003) 105 Cal.App.4th 361, 369); he failed so to do.

casts upon the party the duty of looking after his legal rights and of calling the judge's attention to any infringement of them.  If any other rule were to obtain, the party would in most cases be careful to be silent as to his objections until it would be too late to obviate them, and the result would be that few judgments would stand the test of an appeal.' " (*Sommer v. Martin* (1921) 55 Cal.App. 603, 610.)

Even if we were to address this issue we would point out that Judge Stewart signed the order and judgment in the dissolution case and we are required to presume the trial court's judgment was correct.  (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.)  We note that "[t]rial courts have broad equitable power to fashion any appropriate remedies.  [Citation.]  In doing so, they may consider any unjust or harsh results, and adopt means to avoid them.  [Citation.]  'Equitable relief is by its nature flexible, and the maxim allowing a remedy for every wrong [citation] has been invoked to justify the invention of new methods of relief for new types of wrongs.' "  (*Shapiro v. Sutherland* (1998) 64 Cal.App.4th 1534, 1552.)  Family law courts in particular have broad discretion to select appropriate enforcement remedies and terms based on the equities of the situation.  (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2010) ¶ 18:1.5, pp. 18–1 to 18–2; § 290 [Judgments or orders made or entered under the Family Code are enforceable by the family court by execution, . . . *or by any other order* as the court *in its discretion* determines from time to time to be necessary].)  Family Code section 272 states:  "(a) Where the court orders one of the parties to pay attorney's fees and costs for the benefit of the other party, the fees and costs may, in the discretion of the court, be made payable in whole or in part to the attorney entitled thereto."  Of course, in this case the court ordered the attorney fees to be paid to Ms. Saeb "payable as additional spousal support" by Mr. Saeb to Ms. Saeb.  Naegele has failed to convince us with reasoned argument that DeVries came before the court with unclean hands.  It is an appellant's burden to persuade us that the court erred in ways that result in a miscarriage

12

of justice.  (*Vaughn v. Jonas* (1948) 31 Cal.2d 586, 601; *In re Marriage of Dellaria* (2009) 172 Cal.App.4th 196, 204-205; Cal. Const., art. VI, § 13.)

*Disposition*

The judgment is affirmed.  The parties shall bear their own costs of appeal.


_____

ELIA, J.


WE CONCUR:



_____

RUSHING, P. J.




_____

PREMO, J.